Francis v. Burnett.

---

CASE 4—PETITION ORDINARY—APRIL 6.

# Francis v. Burnett.

APPEAL FROM WAYNE CIRCUIT COURT.

1. IN ORDER TO AUTHORIZE AN ATTACHMENT upon the ground specified in subsection 2 of section 194 of the Civil Code, it must appear not only that the defendant has not enough property in the State subject to execution to satisfy the plaintiff's demand, but that the collection of the demand will be endangered by delay in obtaining judgment, or a return of no property found. One of these conditions is not necessarily the concomitant of the other, although it may be so as a general rule when the defendant alone is bound upon the demand sued on.

In this case, although the defendant did not have sufficient property subject to execution to satisfy all the demands sued upon, yet

as the plaintiff might have collected his debts without an attachment if he had in good faith sued all those who were bound in the several notes, and who were within the jurisdiction of the court, it does not appear that the collection of the debts will be endangered by delay in obtaining judgment, or, if so, it is the plaintiff's own fault in forbearing to sue others jointly bound with the defendant.

2. AN APPEAL FROM A JUDGMENT SUSTAINING AN ATTACHMENT may be prosecuted by the debtor whose property was attached, although at the time the judgment was rendered the title to the property had vested in an assignee for the benefit of creditors, the debtor having the *prima facie* right, in case the attachment is discharged, to sue for malicious prosecution, notwithstanding the assignment.

3. AN ASSIGNMENT FOR THE BENEFIT OF CREDITORS does not transfer to the assignee causes of action which do not survive to the personal representative.

The right of the debtor to sue for the malicious prosecution of an attachment does not pass to the assignee.

4. PRACTICE—SEPARATION OF CONCLUSIONS.—The section of the Code requiring the court. when so requested, to state in writing its conclusions of fact and of law separately, does not relate to the trial of provisional remedies.

5. A MOTION FOR A NEW TRIAL IS NOT NECESSARY in order to the prosecution of an appeal from a judgment sustaining an attachment.

M. C. & J. C. SAUFLEY FOR APPELLANT.

1. To sustain an attachment obtained under subsection 2, section 194, Civil Code, it must be alleged and proved, not only that the defendant has not enough property in this State subject to execution to satisfy the plaintiff's demand, but that the collection of that demand will be endangered by delay in obtaining a judgment and a return of "no property found."

 The existence of the latter condition is not necessarily implied from the existence of the former.

2. Where a creditor has other security for his demand than the mere personal security of the debtor, his attachment obtained under subsection 2, section 194, Civil Code, can not be sustained unless it be alleged and proved that he has proceeded against and exhausted this additional security.

J. KNOX FRAZER AND MORROW & NEWELL FOR APPELLEE.

1. It is not necessary that an affidavit for an attachment should state the grounds for the attachment in the very words of the Code; a substantial compliance with the statute is sufficient. (Bell, Berkly & Co. v. Hall, 2 Duv., 195; Harwell v. Owen, MS. Op., December, 1856; Myers' Code, page 449, note 9.)

2. The allegation that the collection of the plaintiff's demand will be endangered by delay, caused in obtaining judgment and return of "no property found," is sufficiently established by proof that the defendant had not sufficient property subject to execution to satisfy that demand. (Jenkins v. Jackson, Loving & Co., 8 Bush, 373; Burdett v. Phillips, 78 Ky., 246.)

3. It is no defense to an attachment that no proceedings have been taken against those who are jointly bound with, or liable as sureties for, the defendant. (Moore v. Sheppard, 1 Met., 97; Myers' Code, section 221; Drake on Attachment, third edition, section 38; Chittenden v. Hobbs, 9 Iowa, 417; Austin v. Burgett, 10 Iowa, 302; 4 Pick., 444; 11 Pick., 480; 13 Pick., 117; 6 Gray, 146.

4 A debtor can not prosecute an appeal from a judgment sustaining an attachment against him, if the title to his property had vested in an assignee for the benefit of his creditors. His substantial rights can not be affected by the judgment.

5. An appeal can not be prosecuted from a judgment sustaining an attachment, until a motion for a new trial has been made in the court below. (Helm v. Coffey, 80 Ky., 176)

SAME COUNSEL and WM. LINDSAY in petition for rehearing.

The assignee was the only person who had the right to appeal from the judgment sustaining the attachment. A general assignment for the benefit of creditors passes to the assignee all causes of action of the assignor, except those arising from mere personal torts. (Burrill on Assignments, 4 edition, page 148, section 103; McKee v. Judd, 12 N. Y., 622; Rogers v. Spence 13 Mees. & W., 580; Patten v. Wilson, 34 Penn St., 299; Jordan v. Gellen, 44 N. H., 424; Butler v. R. Co., 22 Barb., 110; Knefler v. Shreve, 79 Ky., 307; Mayo's Adm'r v. Snead, Ibid., 634.)

JOHN S. VANWINKLE of counsel on same side.

JUDGE LEWIS delivered the opinion of the court.

September 3, 1884, Burnett instituted an action against Francis on nine promissory notes, and obtained an attachment against his property for the causes prescribed in subsection 2, section 194, Civil Code, which is as follows:

"In an action for the recovery of money due upon a contract, judgment or award, if the defendant have no property in this State subject to execution, or not

enough thereof to satisfy the plaintiff's demand, and the collection of the demand will be endangered by delay in obtaining judgment or a return of no property found."

There being no defense to the action, personal judgment was rendered by default for the balance due of the notes sued on; but the defendant moved for the discharge of the attachment on the face of the papers, and subsequently filed his affidavit controverting the grounds thereof; and this is an appeal from the judgment overruling his motion and sustaining the attachment.

As there are some preliminary questions raised by counsel which affect the right of the defendant, Francis, to prosecute the appeal, they will be first considered.

1. It appears that September 13, 1884, the defendant conveyed all his estate to James Tuggle, in trust for his creditors generally, and did not have title to the attached property when the judgment appealed from was rendered; and it is contended he, for that reason, has no right to complain of the sale of the property attached, and that the judgment did not affect his substantial rights.

It may be true that Tuggle, the assignee, if he had been a party, might have contested the attachment, and resisted judgment for a sale of the attached property. Nevertheless, Francis having been the owner when the attachment was issued and levied, has a right of action against Burnett, not forfeited or waived by the conveyance to Tuggle, but depending upon the final judgment sustaining

or discharging the attachment, and was consequently a real party in interest on the trial of the attachment, and may prosecute this appeal.

2. A motion for a new trial in the lower court was not necessary in order to bring the judgment sustaining the attachment before this court for revision. The rule of practice referred to by counsel has relation only to trials of actions, and does not apply to the trial of an attachment, which it is specially provided by section 264, Civil Code, shall be tried by the court.

3. Nor does section 332, even if it was susceptible of the construction contended for, at all relate to the trials of provisional remedies. It was not, therefore, necessary in this case for the lower court to state in writing its conclusion of fact and of law separately, in order to give this court the right to revise the judgment.

The appeal being then properly before us, we will consider the several grounds relied on for reversal.

We deem it unnecessary to discuss the constitutionality of the subsection of the Code under which the attachment was obtained, for it has been heretofore passed on by this court, and is not now an open question.

In order to determine whether the attachment was obtained upon sufficient cause, which is the main inquiry, it becomes not only necessary to construe the law, but to refer with some particularity to the notes sued on, and the facts contained in the bill of exceptions as admitted or proved.

Two only of the nine notes, amounting in round

numbers to one thousand five hundred and six dollars, were executed by Francis alone directly to Burnett. One other, amounting to two hundred and seventy-one dollars, was given by him to J. C. Ramsey, his partner in business, and by the latter assigned to Burnett, making the whole amount for which Francis was individually bound to Burnett when the action was commenced one thousand seven hundred and seventy-one dollars.

Two of them, amounting to one thousand seven hundred and ninety-five dollars, were executed to Burnett by the firm of Shearer, Francis & Ramsey, and three on the same firm, amounting to about nine hundred dollars, were assigned to him, making the whole amount owed by that firm the sum of two thousand six hundred and ninety-five dollars.

He also held one on Francis & J. C. Ramsey for one thousand dollars.

The whole amount of the nine notes, each of which fell due, or the accrued interest on each of which was paid up during the year 1884, was about five thousand three hundred and sixty dollars.

It appears that when the attachment was obtained both Shearer & Ramsey, members of the firm mentioned, were resident citizens of Wayne county, where the action was brought, but neither of them was made a party or sued on the notes for which they were, jointly with Francis, bound.

All the assigned notes were purchased by Burnett at their face value, and transferred to him a few days only prior to the commencement of the action.

It farther appears that Burnett admitted, on the

trial of the attachment, that he believed, at the time he purchased the notes assigned to him, he had already enough debts against Francis to enable him to obtain the attachment; but he procured the additional notes in order to render it certain that the aggregate of his demands would exceed the value of Francis' property subject to execution. And Ramsey testified that Burnett, a short time before bringing the action, informed him of his purpose, and took the note he held on Francis with a verbal agreement between them, that if he collected it by the suit he was about to commence against Francis, he would pay to him, Ramsey, the note given to the latter in consideration of the transfer, otherwise it was to be canceled, and the one sued on returned.

The evidence conduces to show that when the attachment was obtained, property subject to execution was owned by Francis, varying in value from three thousand nine hundred dollars to six thousand dollars, by the firm of Shearer, Francis & Ramsey, of the value of two thousand four hundred dollars, by J. C. Ramsay of about the value of three thousand one hundred dollars, and by Shearer of the value of from four thousand five hundred dollars to five thousand dollars.

Prior to the act of 1870 no attachment was authorized for the causes set forth in the subsection under consideration. And that act, as construed in the case of Jenkins v. Jackson, 8 Bush, 373, authorized merely money, choses in action, and equitable interests to be attached. It was not until the adoption of the present Code, in which was engrafted the sub-

section quoted, that the property generally of the debtor was made subject to attachment for the causes mentioned. It has consequently resulted that the meaning and application of the provision to questions such as are presented in this case have not been determined by this court; the only case where the law, as it now exists, has been considered, being Burdett v. Phillips, 78 Ky., 246, which was unlike this.

Every cause for which an attachment was authorized before the act of 1870 implied some act on the part of the debtor done with the fraudulent intent to cheat, hinder, and delay his creditors, or which operated to obstruct the service of summons against him. But the causes prescribed in subsection 2 exist not by reason of any act done by the debtor, but on account of his misfortune. Therefore, as said in Jenkins v. Jackson, "this extraordinary and in many cases oppressive proceeding should not be sustained unless clearly authorized by the law under which the attachment issues."

There are two conditions, both of which must be shown in the affidavit of the plaintiff to exist, in order to obtain the attachment, and likewise must appear on the trial to justify the court in sustaining it:

*First.* The defendant must have no property in this State subject to execution, or not enough thereof to satisfy the plaintiff's demand.

*Second.* The collection of the demand will be endangered by delay in obtaining judgment, or a return of no property found.

Francis v. Burnett.

We would not be inclined to disturb the judgment of the lower court upon the ground that the defendant, Francis, had, as a matter of fact, when the attachment was obtained, property enough subject to execution to satisfy the entire amount of the demands upon which he was sued, for the evidence does not clearly show he had; and construing the law literally, the first one of the conditions mentioned might be said to exist when the property of the defendant subject to execution is less in value than the amount of the demand of the plaintiff, whether there be others not sued jointly bound with him or not. It is also undoubtedly true, for it has been repeatedly so held by this court, that the plaintiff may, at his election, sue all or any one of those jointly bound on a promissory note, and may, for any other cause prescribed by the Code besides those mentioned in the subsection we are considering, obtain an attachment against any one to whom the act or purpose constituting the cause may be imputed. But it is very questionable whether it was intended by the Legislature that a plaintiff might obtain an attachment against one only of several obligors in a note upon the ground *he* had not sufficient property subject to execution to satisfy the demand, when the combined property of the obligors is more than sufficient, and when, consequently, the reason for an attachment does not exist. It is also a very serious question whether a plaintiff has a right to purchase debts against a defendant not in good faith, and in the usual course of business, but for the sole purpose of obtaining an attachment

upon the ground of want of sufficient property to satisfy the demand.

It is safe to assume in every case that the object of remedial statutes is not for the mere purpose of oppression, or to enable one, through the instrumentality and in the name of law, to harass an unfortunate debtor. In the language of the Code, the purpose of an attachment is as a security merely for the satisfaction of such judgment as may be recovered, and it was not contemplated that it should be ever used for any other purpose.

In this case it is placed beyond question that the property of the defendant subject to execution was sufficient to satisfy the demands for which he was alone bound, and the aggregate value of property belonging to those jointly bound with him was, without doubt, more than sufficient to satisfy all the joint demands held by him, including those transferred at their face value.

It is not necessary, however, to determine whether the first of the conditions existed in contemplation of law; for we are clear that the other did not exist, and without it the attachment can not be sustained.

Counsel calls attention to the language of this court in Burdett v. Phillips, where it is said one of the conditions seem to be concomitant of the other. This may be, as a general rule, true where the defendant alone is bound upon the demand sued on, though we can readily conceive exceptions to it; for if such defendant has not enough property to satisfy the plaintiff's demand against him, the demand may be generally, but not in every case, said to be endangered, in the meaning of the Code, by delay.

Francis v. Burnett.

But it seems to us that some independent meaning was intended to be given to the language used in the latter clause of the subsection, and that the Legislature had in contemplation cases where the collection of the demand would not be endangered, nor ground for an attachment exist, though the party sued might not have sufficient property subject to execution to satisfy it. Certainly, if in point of fact the collection of the demand of the plaintiff will not be endangered by delay in obtaining judgment, and return of no property found, he is not entitled to it, for such is the plain language of the law, and it can not be ignored or violated.

The evidence in this case shows conclusively not only was there sufficient property subject to execution owned by those bound on the notes, but the collection of the demands would not have been endangered by delay. It is true the defendant, Francis, alone did not have sufficient property to satisfy all the demands. But if the plaintiff had in good faith sued all those who were bound on the several notes, and who were within the jurisdiction of the court, he might, as satisfactorily appears from the record, have collected his debts without an attachment. And, moreover, if he had done so he could not have truthfully stated in his affidavit that either cause for the attachment existed.

If the collection of his demand was endangered, it was so by reason of his extraordinary and unnecessary conduct in voluntarily foregoing his right of action against those jointly bound with the defendant. The law in question was not intended to au-

vol. 84.—3

thorize an attachment against the property of the debtor, where, in a case like this, the ordinary process, if in good faith adopted, is sufficient to enable the plaintiff to collect his debt.

Wherefore the judgment sustaining the attachment is reversed, and cause remanded for further proceedings consistent with this opinion.

To the petition of counsel for appellee for a rehearing Judge LEWIS delivered the following response of the court:

It is beyond question, and seems to be conceded in the petition for rehearing, that if Francis may maintain an action against Burnett in the contingency of the attachment being finally discharged, he has the right to prosecute this appeal from the judgment of the lower court sustaining it. But it is contended that whatever right of action he might have had, on account of the attachment being wrongfully obtained, passed by the deed of assignment to Tuggle, who alone thereafter could controvert the grounds of the attachment or appeal to this court.

It is true the right to sue on the attachment bond was transferred to the assignee, but, in our opinion, the right of Francis to sue for malicious prosecution was not, nor could be, transferred to Tuggle, the assignee, but remained unaffected by the deed of assignment.

In Burrill on Assignments, 4th ed., section 103, referred to by counsel, it is said, on the authority of Comegys v. Vasse, 1 Pet., 193, and other cases

cited, that claims growing out of mere personal torts, which die with the party, and do not survive to his personal representatives, are incapable of passing by assignment; and in Lawrence v. Martin, 22 Cal., 174, it was expressly held that a cause of action for malicious prosecution is not assignable even after verdict.

The rule seems to be well established that causes of action which do not survive to the personal representatives are incapable of passing by deeds of assignment for the benefit of creditors, and those which do not are specified in chapter 10, General Statutes, which is as follows:

"That no right of action for personal injury, or injury to real or personal estate, shall cease or die with the person injuring or person injured, except actions for assault and battery, slander, criminal conversation, and so much of the action for malicious prosecution as is intended to recover for the personal injury," etc.

As, therefore, Francis, notwithstanding the deed to Tuggle, has a *prima facie* right, in case the attachment is discharged, to sue for malicious prosecution, and if he makes out a case, recover for the personal injury, we think he is a proper party to this appeal.

Petition overruled.