CASE 7—PETITION EQUITY—MARCH 15.

93  27
d109 318

93  27
110 843

# Moore, Bremaker & Co. v. Stege & Reiling.

### APPEAL FROM HARDIN CIRCUIT COURT.

1. ASSIGNMENTS FOR CREDITORS—EXEMPTIONS.—The fact that a deed of assignment for the benefit of creditors reserves to the debtor the property that is exempt to him by law without specifying the exemptions, does not render the assignment void or prevent it from taking effect at once, although the exempt property has not been set apart.

2. SAME—FRAUD.—The intent with which a deed of assignment is made and not the actual effect of it must determine whether or not it is fraudulent. And, unless it is the result of a scheme for the debtor's advantage, and made for the purpose of overreaching creditors, it should be upheld, such conveyances being favored in law.

   The mere fact that a debtor when he made an assignment hoped to compromise with his creditors is not sufficient to invalidate the assignment.

3. RES JUDICATA — A judgment discharging the first of two attachments and sustaining the second, having been reversed by the Superior Court only in so far as it sustained the second attachment, the decision of that court is to be regarded as an affirmance of the judgment in so far as it discharged the first attachment; and the question as to the correctness of the court's judgment in that respect is now *res judicata.*

S. H. BUSH FOR APPELLANTS.

1. The first attachment was void, because of collusion, and as there is no proof sufficient to show that the deed of assignment was made with intent to defraud, it passed the title to the debtor's property and the second attachment should have been discharged. (General Statutes, chap. 44, art. 1, sec. 1; *Idem.*, art. 2, sec. 1.)

2. If the deed is void, it should have been attacked within six months.

W. H. MARRIOTT FOR APPELLEES.

1. It is the intention of the debtor, in making a deed of assignment for the benefit of creditors, that determines whether the deed is void for fraud. (Burrill on Assignments, sec. 331; German Ins. Bank v. Nunes, 80 Ky., 334; Vernon v. Morton, 8 Dana, 247; Keteltas v. Wilson, 36 Barb., 298; Work v. Ellis, 50 Barb., 512; Bank of Commerce v. Payne, Viley, &c., 86 Ky., 446; Matthews v. Poultney, 33 Barb., 127; Bank of United States v. Huth, 4 B. M., 431.)

   An assignment made or threatened by a debtor with the view or for the avowed purpose of effecting a compromise with his creditors, and a consequent release from the remainder of his indebtedness, is a fraud upon his creditors and is ground for an attachment.

2. The deed was inoperative to pass the title of the debtor, until he had selected and separated from the bulk of his personal estate the exemptions reserved. (Block Bros. v. Maas & Block, 65 Ala., 211; Sugg v. Tillman, 2 Swan, 203; Puckett v. Richardson, 6 La., 49; Williamson v. Steele, 3 La., 530; Thurman v. Jenkins, 2 Baxter, 431; Overton v. Holinshade, 5 Heisk, 683; Forquahorson v. McDowell, 2 Heisk, 415; Clark v. Rollins, 8 Kan., 514; Furgeson v. Northern Bank of Ky., 14 Bush, 555.)

3. In so far as the petition of appellants attempts to defeat plaintiff's attachment, upon the ground that Hawkins had committed an act of insolvency under the act of 1856, by preferring plaintiffs to his other creditors, it can not be maintained, because not filed within six months from date of act complained of. (Cogar v. Stewart, &c., 78 Ky., 61.)

The petition of appellants is also defective in that it fails to state that the acts complained of were done in contemplation of insolvency. (Gen. Stats., chap. 44, art. 2, sec. 1; Terrill v. Jennings, &c., 1 Met., 455; Hampton, &c., v. Morris, Rodman, &c., 2 Met., 338; Millett, &c.; v. Pottinger, &c., 4 Met., 215; Brown & Co., v. Cosley, 8 Bush, 390.)

4. The grounds of attachment are all sustained by the proof.

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

November 16, 1887, Stege & Reiling sued W. C. Hawkins on ten notes for one hundred dollars each, only four of which were then due, however, and sued out an attachment against his property, upon the grounds that he had not enough subject to execution to pay their debt or had disposed of his property for the purpose of defrauding or delaying his creditors, or was about to do so.

In a few hours after this was done, he made a general assignment of his property, consisting for the most part of a stock of goods, for the benefit of all his creditors, reserving to himself, however, whatever was exempt by law. The assignee was made a defendant to the action, and both he and Hawkins filed answers denying the grounds of attachment.

May 8, 1888, the appellees filed an amended petition, setting forth the maturity of all their notes, and that Hawkins' property was not sufficient to pay their debt, or

that he had disposed of it with the fraudulent purpose of cheating or delaying his creditors.

They sued out another attachment, and as the goods had now been sold and the proceeds were in the hands of the assignee, who had also been made receiver, it was served upon him and the clerk of the court.

November 15, 1888, Moore, Bremaker & Co., creditors of Hawkins, were, upon their petition, made defendants to the action; and their answer, after setting forth their debt, avers collusion between Hawkins and the appellees in the suing out of their original attachment, with the intention of defrauding the other creditors. They also denied the grounds of attachment.

The court rendered a personal judgment against Hawkins for the debt, discharged the first attachment, held the deed of assignment to be fraudulent, and, therefore, void; sustained the second attachment and adjudged the fund in court accordingly, deducting, however, the costs of selling the property, and allowing Hawkins a portion of it for exemptions.

October 9, 1889, the Superior Court, upon the appeal of Moore, Bremaker & Co. and the assignee, decided that the judgment, holding the deed of assignment to be void and sustaining the second attachment, was erroneous. This was done upon the ground that the deed had not been attacked by any pleading, and unless it were void, obviously the second attachment could not operate upon the assigned property. The opinion of the Superior Court may be regarded as affirming the action of the lower court in discharging the first attachment.

It also decides that the reservation in the deed of the exempt property did not render it void, or make it in-

operative, until the exempt property should be separated and set apart to the debtor.

It is true, in a sale of personal property where something remains to be done by the vendor which is necessary to identify what is sold, as if the sale be of a certain quantity to be separated from a greater quantity, the title does not pass until this is done.

This rule does not apply, however, in the case of an assignment by a debtor of his property for the benefit of his creditors, he receiving whatever is exempt by law. In such a case the law allows the reservation and fixes what he shall have; and if the assignment could not become operative until this were done, the object of it would often, perhaps usually, be defeated, unless the debtor would forego his exemption right. The deed can not enumerate the articles removed, because the statute allows other exemptions beside specific things, and, of course, the reservation is not fraudulent because the law allows it.

The testimony tends to show that the property of the debtor that was liable to execution for his debts was, when the first attachment was sued out, really worth more than what was then due of the appellees' debt.

Whether this be true or not, it appears they were his particular friends. A day or two before the attachment was sued out he notified them by letter of his embarrassed condition; that his credit was gone; that if they wished to attach his property it would be all right with him, and that he was thinking of making an assignment.

He invited the attachment, and the invitation was at once accepted. It is evident the appellees were, in suing it out, endeavoring to secure an advantage over the

other creditors, and in this they were being assisted by the debtor. This was such a collusion and combination as the law condemns.

It is said that as the answer of Moore, Bremaker & Co., in which their debt was asserted, was traversed upon the record and their claim not proven, therefore they can not be heard to set up the fraudulent collusion. The debt was, however, admitted by the debtor, not only in the deed of assignment, but also in the letter written by him to the appellees.

It was, however, unnecessary to consider these questions relating to the first attachment. We have done so to some extent, because they have been discussed by counsel at length. All questions as to it were rendered *res judicata* by so much of the first judgment of the circuit court as discharged it, and the action of the Superior Court upon the first appeal to it. For this reason it is unnecessary to consider whether the collusion between the debtor and the appellees in suing out their original attachment created a preference within the statute of 1856, and which, by its terms had to be assailed, if at all, within a certain time.

Upon the return of the cause from the Superior to the circuit court, an amended petition was filed attacking the assignment as fraudulent. This was denied. If valid, then, of course, the second attachment can have no effect and should be discharged.

Upon the hearing the deed was held to be invalid for fraud, upon the part of Hawkins in the making of it, and the second attachment was sustained.

The Superior Court has also reversed this judgment, and the case, after a long travel, is now before us.

It is contended that the deed was made for the purpose of forcing a compromise with creditors, and is therefore fraudulent.

The only evidence to support this claim is, that Hawkins, in the letter to appellees, speaks of the advisability of making an assignment, and then trying to get a compromise with his creditors. The letter shows, however, an earnest desire upon his part to pay all of them. He also testifies that when he made the assignment he had in view such a compromise, and that he then spoke to the assignee as to it, saying he thought it could be effected. His evidence shows, however, that he was then conducting his business honestly, and the most that can be said, when all of the testimony is considered, is, that when the assignment was made he had an expectation, a hope of compromising with his creditors. This does not vitiate the assignment. If so, one would rarely be upheld. It is, probably, seldom that a debtor assigns without at least some expectation of this character.

It is true, the intent with which a deed of assignment is made, and not the actual effect of it, must determine whether or not it is fraudulent. (German Ins. Bank v. Nunes, &c., 80 Ky., 334.)

But unless it is shown that the making of it was a trick or contrivance for the debtor's advantage, an honest and equal distribution of his estate among his creditors being out of sight, or, at most, but a secondary and subordinate consideration, it should be upheld.

Such conveyances are, and ought to be, favored in law. They promote fairness and equality among the creditors, and it is only when they are the result of a scheme for the debtor's advantage, and made for the purpose of

overreaching the creditor, that they should be held void. Bank of Commerce v. Payne, Viley & Co., &c., 86 Ky., 446.

The evidence in this action clearly does not present such a case.

The personal judgment entered against Hawkins on June 18, 1890, should be regarded as in lieu of the previous one against him.

The judgment is reversed upon the original and affirmed upon the cross appeal, and case remanded with directions to the lower court to distribute the estate as required by the deed of trust, and for further proceedings in conformity to this opinion.