| 109 | 311 |
| 115 | 722 |

CASE 46—ACTION ON NOTES—OCT. 31.

# Deposit Bank of Owensboro v. Smith, &c.

APPEAL FROM DAVIESS CIRCUIT COURT.

JUDGMENT ENTERED DETERMINING PRIORITY AS BETWEEN ATTACHING CREDITORS, AND THE DEPOSIT BANK APPEALS. AFFIRMED.

ASSIGNMENT OF NOTE BY ADMINISTRATOR—SATISFACTION—ATTACHMENT—FRAUDULENT COLLUSION—PREFERENCE OF CREDITOR.

Held: 1. Where an administrator assigned to the widow as her distributable share of the estate certain notes against other distributees, and thereafter, in a settlement with the county court, charged to each of the obligors one-half the notes, the widow, not being a party to the settlement, was not thereby precluded from suing on the notes.

2. The fact that an attachment was procured by fraudulent collusion between the debtor and creditor for the purpose of giving the creditor a preference does not entitle a junior attaching creditor to priority, his only remedy being a proceeding to have the prior attachment declared to operate as an assignment under the act of 1856.

3. The mere filing of a petition by a creditor to have certain acts of preference committed by the debtor declared to operate as an assignment under the statute is not effectual for any purpose unless summons is served upon the debtor.

4. The insolvency of defendant is *prima facie* evidence of the fact that the collection of plaintiff's debt will be endangered by delay for the purpose of sustaining an attachment sued out upon that ground.

SWEENEY, ELLIS & SWEENEY, AND WEIR & WEIR, FOR APPELLANT.

R. S. TODD AND LITTLE & LITTLE, FOR APPELLEES.

(No briefs in record.)

OPINION OF THE COURT BY JUDGE BURNAM—AFFIRMING.

On the 24th day of August, 1891, appellant, the Deposit Bank of Owensboro, Ky., instituted a suit in the Daviess Circuit Court against Fuqua & Smith, a firm composed of J. A. Fuqua and Peter F. Smith, who were engaged in the tobacco business, on a note held by it against them for $18,-209.30. No attachment was taken out by the bank at the commencement of the suit. On the 28th day of August thereafter, appellee, Hattie Smith, also instituted a suit in the Daviess Circuit Court against the same parties on two notes which aggregated at the date of the commencement of the suit $9,406.48. She alleged that these notes had been given by the defendants, Fuqua & Smith, to her deceased husband, J. H. Smith, in consideration of borrowed money, and that the defendant J. A. Fuqua had qualified as the administrator of her deceased husband, and that, after his appointment and qualification as administrator, he had indorsed and assigned each of said notes to her as a part of her distributable share in the estate, and that she became by virtue of this assignment the owner and holder thereof. She at the same time took out an order of general attachment against the property of each of the defendants on the ground "that they did not have property enough in the State subject to execution to satisfy her debts, and that the collection thereof would be endangered

by delay in obtaining judgment and return of no property found." The attachment was levied on certain real estate of P. F. Smith, and returned "No property found as to defendant, Fuqua."

On the 1st day of September thereafter appellant began another suit against Fuqua & Smith on two bills of exchange, each for $5,677, and on the same day filed an affidavit in its former action for an attachment on the same grounds as those relied on by appellee, and also upon the additional ground that Fuqua & Smith had made fraudulent disposition of their property. Appellant's attachment was levied upon the same property as that of appellee. On the 7th day of September the appellant was made a defendant in the action instituted by appellee against Fuqua & Smith, and in the answer filed by them it was alleged that Fuqua & Smith were insolvent, and that the attachment of Hattie Smith was sued out by collusion between her and the defendants, who are her son and son-in-law, and resided with her, with the view of preferring Mrs. Smith to the other creditors of Fuqua & Smith, especially the appellant. They specifically aver that Peter F. Smith had suggested to his mother the suing out of the attachment, and had employed a lawyer for her to institute the suit, and had procured sureties on the attachment bond. In addition to this, appellant pleaded that the debt sued on contained usury, and controverted the ground on which appellee's attachment was sued out. Appellee replied to this answer, denying all the material averments therein. On the 15th day of October, 1891, on the motion of appellee, a judgment was rendered in her favor against Fuqua & Smith for the amount of the notes sued on. Subsequently, on the 20th day of October, 1891, the bank filed an amended answer, in which it was alleged "that the note sued on

belonged at his death to the estate of J. H. Smith, deceased, and that in the settlement of the accounts of J. A. Fuqua as administrator, made in the Daviess County Court, said notes were charged to P. F. Smith and Fuqua's wife, one-half to each; and that they were never delivered to appellee as a part of her interest in the estate of the decedent, but were assigned to her on the day in which the action was brought, and were not at that time subsisting demands against the makers thereof; and that there was no consideration for such transfer; and that the credits indorsed upon the notes since the death of Smith were fraudulent." Appellee, in her reply to this amended answer of appellant, denied specifically the affirmative averments thereof, and alleged "that she was, at and before the alleged county court settlement, the owner and in possession of each of said notes, and that said settlement, in so far as it imports the payment of said notes by their being charged aaginst the respective distributable shares of P. F. Smith and Mrs. Fuqua, is a mistake, and does not show the true facts." She further alleges that she was not a party to the settlement, never knew of it, and was not bound thereby; and that the same settlement showed that the administrator had received credit for the notes as having been assigned to her. The bank rejoined, putting in issue the allegations of the reply; and at the same time tendered an amended answer, in which it was alleged that appellee was surety on the bond of J. A. Fuqua as administrator of J. H. Smith, and if Fuqua, as administrator, had not in fact distributed to his wife or to P. F. Smith the notes sued on, they were still in his hands; and asked a cross petition against Fuqua as administrator and against plaintiff as surety, and prayed that appellant be compelled to resort to the bond for her

debt, and that the bank be subrogated for her rights therein. The court refused to allow the amended answer to be filed which was excepted to. On the 27th day of October, 1891, Marshal Ayer, assignee of Sawyer, Wallace & Co., filed a petition in this action in which he charged collusion between appellee and her son, P. F. Smith, in suing out the writ of attachment taken out by her, and claimed that an act of preference had been committed by P. F. Smith, and sought to have the attachment operate for the benefit of all of the creditors, under the Act of 1856. This pleading was made a cross petition against appellee, but no process was ever sued out thereon against either of the debtors, Fuqua and Smith, and they were never before the court on this pleading.

Upon final submission the circuit judge sustained the attachment of appellee. It is contended that the judgment was erroneous, and should be reversed: First, because of an alleged variance between appellant's pleadings and her proof. It is claimed under this head that Mrs. Smith has sued on notes executed to decedent's estate, when the proof shows that her real cause of action was for money loaned to Fuqua & Smith, not represented by the notes, and independent thereof. To support this contention the county court settlement made with Fuqua as administrator of J. H. Smith is relied on. J. A. Fuqua testifies in his deposition—and his statements are uncontroverted—that the notes sued on were transferred and delivered by him, as administrator of the estate of J. H. Smith, to Mrs. Smith, as a part of her distributable interest in the estate, in January or February, 1885, and that she had been the owner and holder of them from that time, and that the payments credited on the back were not made in regular amounts as the interest became

due, but that the firm had an open account on their books
with Mrs. Smith for money paid for her use and accom-
modation, for taxes, purchases, and for labor; that some-
times this account amounted to more than the interest
due her, and sometimes to less—generally less; and that
at stated intervals settlements were had between them
and credits entered up.  He further testifies that in the
county court settlement he charged these notes to P. F.
Smith and his wife by mistake, and that he afterwards
corrected the error by recharging them on the books of
Fuqua & Smith to bills payable, and giving credit for
one-half to Mr. Smith and the other to himself; and that
the notes sued on are included in the entry "Sundry notes,
.  .  .  $16,300.00," receipted for by appellee in the coun-
ty court settlement, and that he had theretofore credited
them twice.  The county court settlement does not show
on its face that these notes were actually paid by Fuqua
& Smith, but simply that half of them were charged to
each of them.  No doubt it was in the mind of Fuqua at
the time he made this settlement that, while appellee held
the notes sued on under his assignment as administrator,
they would soon be paid by Smith and his wife, and for this
reason they were charged to them.  But appellee was not
a party to this proceeding, and we can not see how she
became so by the order of the county court confirming it,
or that she should be estopped thereby from her action
on the obligations.  It is true that she lost all recourse
against the estate of her deceased husband under the as-
signment by failure to institute suit thereon in proper
time, the obligations have not been discharged, and were
at the date of the institution of her suit existing liabili-
ties due to her by Fuqua & Smith under the assignment

of the administrator of her deceased husband, upon which she had the right to sue.

The next ground relied on is the alleged fraudulent collusion between appellee and her son at the date of the suing out of the attachment. This is a contest for priority of attachment between appellant and appellee alone. Appellant seeks to invalidate a prior attachment of appellee, in order that it may succeed under its own attachment. It is not a proceeding under the act of 1856 for the benefit of all of the creditors of Fuqua & Smith. The assignee of Sawyer, Wallace & Co. instituted a proceeding for the benefit of all of the creditors under the act of 1856, but they appear subsequently to have abandoned this proceeding, and neither of the debtors, Fuqua or Smith, was ever brought before the court on their cross petition. The mere filing of a petition was ineffectual for any purpose. It was necessary not only to have filed the petition within six months from the date of the alleged act of preference, but to have summonses issued against the debtors. See Bank v. Administrator, 83 Ky., 149. And their attorney has filed a brief in this court, in which he says Sawyer, Wallace & Co. have abandoned their claim, and asked to be dismissed. Under the act of 1796 to prevent fraudulent sales and conveyances, the attaching creditor was given the right to set aside a sale which was merely fraudulent, and subject the attached property to the payment of his debts; but there is nothing in this act which prevents an insolvent debtor from preferring one creditor to the exclusion, in part or in whole, of the others. This right has always existed at common law (see Millett v. Pottinger, 4 Metc., 213), and was for the first time prohibited in this State by the act of 1856, which says: "That every sale, mortgage, or assignment made by debtors, and

every judgment suffered by any defendant or any act or device done or resorted to by the debtor in contemplation of insolvency, and with the design to prefer one or more creditors to the exclusion, in part or in whole, of the others, shall operate as an assignment and transfer of all of the property and effects of such debtor, and shall inure to the benefit of all of his creditors in proportion to the amount of their respective demands." Section 1910, Ky. St. It seems to us that there is no fraud in the suing out of appellee's attachment of which appellant can complain. The only relief to which he was entitled was under the act of 1856, and, having failed to proceed under that act, it can not avail itself of its provisions. The cases of Bamberger v. Halberg, 78 Ky., 378; Bank v. Payne (Ky.), 8 S. W., 856, and Moore v. Stege, 93 Ky., 30; (18 S. W., 1019), were all proceedings between attaching creditors and creditors claiming under the act of 1856, and are, therefore, not authority to support the contention here made.

Another ground on which reversal is asked is that appellee's attachment fails because there is no proof that her debt would have been endangered by delay other than that which comes from proven insolvency. Counsel for appellant argues that the opinions of this court in construing subsection 2 of section 194 of the Civil Code are in hopeless conflict. It does not seem to us that the opinions referred to support this contention. In the well-considered case of Burdett v. Phillips, 78 Ky., 246, Judge Cofer says: "The only rational construction we are able to give this statute is that it authorizes an attachment against all of the property of the debtor not exempt from execution whenever he is without a sufficiency of property subject to execution to satisfy the debt, although he may have no design on his part to do anything that will render

the collection of the debt less certain than if the attachment was issued forthwith; and that such was the intention of the lawmaking body is made still more evident from the fact that this court held, under the act of 1870 (Jenkins v. Jackson, 8 Bush, 373), that only choses in action and equitable interest could be seized under an attachment issued under that act. The change in the phraseology of the law indicates a purpose to change the law as declared by the former statute. We have no alternative, therefore, but to enforce the law as we find it plainly written." In Dunn's Trustee v. McAlpin (Ky.), 13 S. W., 363, it was held: "That ordinarily proof under said subsection to the effect that the defe dant has no property in the State subject to execution, or not enough thereof to pay the plaintiff's demand, is *prima facie* sufficient to sustain the allegation that the demand will be endangered by delay in obtaining judgment or return of no property found. But it is only *prima facie* evidence of such fact, which may be rebutted by showing that defendant was, notwithstanding his lack of property subject to execution by them, able and willing to pay the demand." This rule was adhered to in Hoobler v. Howland (Ky.), 43 S. W., 486, Robinson v. McInteer, 15 Ky. Law Rep., 128, and McCulloch v. Cook, Id., 207. The latter cases were decided by the superior court. In Francis v. Burnett, 84 Ky., 30, several parties were jointly bound for the debts sued on, while the attachment was sued out against Francis, one of the obligors, alone. It was made to appear that the property owned by all the debtors might have been sufficient to satisfy the plaintiff's demands. And the court in that case, through Judge Lewis, said: "The evidence in this case shows conclusively not

only was there sufficient property subject to execution owned by those bound on the notes, but the collection of the demands would not have been endangered by delay. It is true, the defendant, Francis, alone did not have sufficient property to satisfy all of the demands. But if the plaintiff had in good faith sued all those who were bound on the notes, and who were within the jurisdiction of the court, he might, as satisfactorily appears from the record, have collected his debts without an attachment. And, moreover, if he had done so, he could not have truthfully stated in his affidavit that either cause for attachment existed. If the collection of his debt was endangered, it was by reason of his unnecessary and extraordinary conduct in voluntarily foregoing his right of action against those jointly bound with the defendant. The law in question was not intended to authorize an attachment against the property of the debtor, where, in a case like this, the ordinary process, if in good faith adopted, is sufficient to enable the plaintiff to collect his debt." And the case of Burdett v. Phillips is referred to. Manifestly, the court did not consider them at all inconsistent. The case of First Nat. Bank of Covington v. D. Kiefer Milling Co. (Ky.), 23 S. W., 675, was not decided on the question of an attachment at all, and the language of Judge Lewis in that case referring to Francis v. Burnett, 84 Ky., 30, does not support the syllabus. It is further contended that Fuqua & Smith had ample property subject to execution to pay appellee's debt when the attachment was sued out. The admitted and proven facts in the record establish the insolvency of Fuqua & Smith beyond a doubt, and there is not a particle of evidence which tends to rebut the presumption, which arises from this fact, that appellee's debt was endangered. Appellants themselves relied

on this fact to sustain their own attachment, and, in our opinion, the proof on the question of the value of the property owned by defendants, Fuqua & Smith, which was subject to execution, supports the finding of the chancellor that it was insufficient to satisfy appellants' demands. For the reasons indicated, judgment affirmed.