# Clover Farm Dairy Company of Memphis v. Gillum, et al.

(Decided November 22, 1927.)

## Appeal from Graves Circuit Court.

1. Evidence.—In answer of garinshee in garnishment proceedings, allegations that money garnished was claimed by defendant held not evidence.

2. Garnishment.—Evidence in garnishment proceedings held insufficient to sustain finding that defendant cream buyer was owner of sum of money paid as result of defendant's arrangements, by consignee of cream to shipper as advance or guaranty of cream drafts, as against claim of consignee intervening in garnishment proceedings.

3. Appeal and Error.—Where no motion and grounds for new trial are filed in common-law action, only question which can be considered on appeal is whether pleadings support judgment of lower court.

4. Appeal and Error.—A motion for new trial held not essential to prosecution of appeal from an order sustaining attachment.

5. Appeal and Error.—On appeal from order sustaining attachment, though motion for new trial is not necessary, bill of exceptions should be filed in order to make evidence part of record.

6. Appeal and Error.—Failure of appellant to file bill of exceptions within time held not to require striking bill, where diligence was shown and delay was due to inability to obtain extension of time on account of absence and illness of presiding judge.

J. KELLY SMITH for appellant.

HOLIFIELD, GARDNER & McDONALD for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

On January 11, 1924, Edward Gillum filed a petition in the Graves circuit court against E. E. Van Horn in which he sought to recover a judgment on the ground that Van Horn had slandered him by charging that he had forged checks on Van Horn. He obtained an attachment against the property of Van Horn, and Bryant and Hawes were summoned as garnishees as was also the First National Bank of Mayfield.

On March 4, 1924, the First National Bank filed its answer as garnishee in which it stated that it had on deposit the sum of $327.10 to the credit of John Watson & Co., and that E. E. Van Horn was claiming the money as his own individual property. On the same day Bryant

and Hawes filed their answer as garnishees, in which they stated that they had drawn a draft for $400 on the Clover Farm Dairy Company at the request of Van Horn, and that the draft had been deposited in the First National Bank to the credit of John Watson & Co. They also stated in their answer that Van Horn was claiming the money.

On March 5, 1924, Van Horn filed an answer to the petition in which he denied the allegations of the petition, and in a second paragraph attempted to set out the language he had used concerning Gillum and sought to justify himself in using the language.

On March 29, 1924, the Clover Farm Dairy Company filed an intervening petition asking to be made a party to the suit and making claim to the $400 referred to in the answer of the garnishees Bryant and Hawes, and the answer of the First National Bank. Later appellee filed a reply to the answer of the garnishee First National Bank, in which it was alleged that the bank had received $400 and had answered saying that it had only $327.10. A motion was entered by appellee asking that the court adjudge the response of the First National Bank insufficient, but the court overruled the motion and adjudged the response sufficient.

On December 23, 1924, Gillum filed an answer to the intervening petition in which he denied that the $400 was advanced to Bryant and Hawes, or that it was the property of the appellee.

The question as to whether the $400 belonged to appellant or Van Horn was submitted to the court without the intervention of a jury, and, after hearing proof, the court adjudged that the $327.10 on deposit with the First National Bank to the credit of John Watson & Co., belonged to E. E. Van Horn and as such was subject to the attachment lien of Gillum. It appears that Gillum settled his case against Van Horn in some way, and later the court entered judgment in favor of Gillum for $25, and directed the First National Bank to pay the $327.10 into court, and the attorneys for Gillum, under the terms of the judgment, were to collect $25 of that sum, and in addition the cost amounting to $23 was to be paid, and the remainder, amounting to $279.10, was to be paid to J. E. Warren, attorney for E. E. Van Horn.

The evidence shows that Van Horn was buying cream from farmers in Graves county and shipping it to appellant at Memphis, Tenn. At times appellant furnished

him the money with which to pay for the cream, and at the end of each week a settlement was made between them. Van Horn approached Bryant and Hawes of Mayfield for the purpose of interesting them in shipping cream which they purchased, to appellant instead of selling it to Swift & Co., as they were then doing. Bryant and Hawes kept their dairy account in the name of John Watson & Co., in the First National Bank. They were willing to ship the cream to appellant, but they wanted a deposit which would guarantee the payment of such drafts as they might draw on appellant in payment for cream. Van Horn advised them that appellant would make such deposit, and he called appellant by telephone and explained the situation. A member of the firm of Bryant & Hawes also talked with appellant, and as a result of the understanding then reached, Bryant and Hawes drew a draft on appellant for $400, the proceeds of which were placed to the credit of John Watson & Co., in the First National Bank. This it appears was either an advancement to Bryant and Hawes, or a deposit to guarantee the payment of such drafts as might be drawn by them on appellant in payment for cream. After the money was deposited to the credit of John Watson & Co., $72.90 was used by the bank to pay checks which had been drawn by Van Horn on another bank which apparently had been paid by the First National Bank. The cashier of the bank testified that this was done without authority from any one.

As the record stands, Van Horn nowhere claimed the $400. He does not claim it in any pleading filed by him in this action, and he did not testify in the case. It is true in the answer of the bank and also in the answer of Bryant and Hawes it was stated that Van Horn was claiming the money, but this is not evidence. Gillum joined issue with appellant on the question as to whether the money which had been attached belonged to appellant or Van Horn. He had no interest in the matter further than his attachment. Bryant and Hawes shipped no cream to appellant, and therefore no credit was entered against this $400, which was charged to them on the books of appellant. Appellant seems to have treated the $400 as an advancement to Bryant and Hawes, but Bryant and Hawes treated it as a deposit to guarantee the payment of any drafts which might be drawn by them on appellant, and, as no drafts were drawn, accord-

ing to their theory of the matter, the $400 belonged at all times to appellant.

Counsel for appellees in this case insist that no question can be considered other than whether the pleadings support the judgment of the lower court, because no motion and grounds for a new trial were filed, and further because the bill of exceptions was not filed in time. Undoubtedly a motion and grounds for a new trial are necessary in a common-law action whether the case be tried before a jury or before the court, and, if no such motion is made, the only question which may be considered by this court is whether the judgment is supported by the pleadings. Sovereign Camp, W. O. W. v. Hornung, 190 Ky. 381, 227 S. W. 465; McKinney v. Knapp, 201 Ky. 768, 258 S. W. 314.

But is a motion for a new trial necessary to prosecute an appeal from an order sustaining an attachment? We think not. This court so held in the case of Francis v. Burnett, 84 Ky. 23, where it said:

"A motion for a new trial in the lower court was not necessary in order to bring the judgment sustaining the attachment before this court for revision. The rule of practice referred to by counsel has relation only to trials of actions, and does not apply to the trial of an attachment, which it is specially provided by section 264 (now section 243), Civil Code, shall be tried by the court."

It was further held in that case that it was not necessary for the court to state in writing its conclusion of facts and of law separately in order to give this court the right to revise the judgment.

Although a motion and grounds for a new trial may not have been necessary, it is insisted by counsel for appellees that a bill of exceptions should have been filed if the evidence was to be made a part of the record, and in that they are correct. Dupoyster v. Ft. Jefferson Improvement Co.'s Receiver, 121 Ky. 518, 89 S. W. 509, 28 Ky. Law Rep. 504. The bill of exceptions in this case was not filed within the time originally given to file the bill of exceptions. Counsel for appellant filed his affidavit, in which he stated that appellant had been given until the 12th day of the March term of the Graves circut court in which to file his bill of exceptions and that the term of court commenced on the 2d day of March, 1925;

that his bill of exceptions was lodged with the clerk of the court for filing on the first day of the term, but appellant was unable to obtain bill of evidence for filing, although it had made repeated efforts to do so. He stated that he went to the courthouse on the 10th and 13th of the month for the purpose of getting an order extending the time for filing the bill of evidence, and that on both occasions no court was in session, and that there was no session of the Graves circuit court from Monday, the 9th day of March, until Tuesday, the 17th day of March, and that during that period he inquired daily or was present in person in the courtroom, and that he learned no court was to be held during that period on account of the illness of the presiding judge who was out of the county and unable to hold court, that he was unable to enter his motion for an extension of time until court reconvened, and that he did enter his motion on the 20th day of the month, and that he then explained to the court the reasons why the bill of evidence had not been filed, whereupon the court entered an order extending the time for filing the bill of evidence until the 4th day of April, 1925. The bill of evidence was filed on March 31, 1925. He had a good reason for asking for the extension, as is shown by its having been granted when his motion was made.

Counsel for appellees rely on the case of City of Henderson v. Kentucky Peerless Distilling Co., 161 Ky. 1, 170 S. W. 210. In that case the bill of exceptions was filed in the clerk's office because there was no court in session on the day that it should have been filed. This court held nothing more than that the filing of the bill in the clerk's office was all that could be done, and that the appellant was not responsible because there was no court on the day that the bill was to be filed. That case is referred to in the case of Eubanks v. Commonwealth, 184 Ky. 126, 211 S. W. 556, where this court said that it was not held in that case that appellant had a right to file the bill of exceptions in the clerk's office. In the last-mentioned case this court held that where the circuit court adjourned before the day to which time had been given to file a bill of exceptions that it might be filed when the court convened after the adjournment as the adjournment of the court automatically extended the time for filing the bill of exceptions, and that, as it was filed immediately upon the reconvening of the court, it was in time.

Again in the case of City of Ludlow v. DeVinney, 185 Ky. 316, 215 S. W. 45, this court held that, where a party had his bill of exceptions ready to file, and if it was not filed in time because the court was not in session he might file it at the first opportunity after the court reconvened. In the last-mentioned case this court in its opinion cited the old case of McFarland v. Burton, 89 Ky. 294, 12 S. W. 336, 11 Ky. Law Rep. 499, as supporting the conclusion of the court that where a bill of exceptions would have been filed in time except for the fact that the judge who presided at the trial was absent and his court not open, then the parties offering the bill might tender and file it in court within seasonable time after the judge who presided at the trial opens his court.

In each of the cases referred to the party had his bill of exceptions ready and was prevented from filing it on account of the absence of the judge or the recess of the court. But in this case the party did not have his bill of evidence ready, although he had filed his bill of exceptions in the clerk's office. His purpose in keeping in touch with whether court was in session with the judge present and presiding was not to file the bill of evidence, but to enter a motion before his time had expired for an extension of the time in which to file his bill of evidence. He was prevented from making this motion, so counsel for appellant states, because of the absence of the presiding judge who was ill in another county. We can perceive no difference in his having been prevented from entering his motion for an extension of time and a case where he was prevented from filing his bill of exceptions in time. His motion was seasonably made after the court reconvened, and time was given. Under this state of facts the motion to strike the bill of evidence must be overruled.

Appeal granted, judgment reversed, and cause remanded for proceedings consistent with this opinion.