ÆTNA INSURANCE COMPANY V. BANK OF WILCOX ET AL.,
APPELLEES, IMPLEADED WITH CHICAGO LUMBER
COMPANY ET AL., APPELLANTS.

FILED MAY 19, 1896.    No. 6593.

1. Partnership: PREFERRING CREDITORS. A copartnership has the right to prefer one of its creditors to the exclusion of another, provided the preference is made and accepted without any fraudulent purpose.

2. ———: RIGHTS OF CREDITORS. A copartnership does not hold its property in trust for its creditors, nor have creditors a lien upon copartnership property simply because they are its creditors.

3. ———: EVIDENCE OF MEMBERSHIP. The receipt by a party of a share of the profits of a venture merely as compensation for services, such party having no interest in the property made the subject of the venture, and no power in the management or control of such property, other than that of an ordinary retail salesman thereof, does not constitute such person a partner. (*Waggoner v. First Nat. Bank of Creighton,* 43 Neb., 84.)

4. Pledges: PARTNERSHIP: RIGHTS OF CREDITORS. So long as a debt remains unpaid the creditor has the right to hold all the property pledged to him to secure its payment, and equity will not award to other creditors a part of the property pledged solely on the ground that the remainder would probably be sufficient to pay the debt secured.

5. Garnishment: PARTNERSHIP CREDITORS. Unsecured creditors, by garnishment proceedings, may compel a secured creditor to account to them for the surplus that remains of property pledged after satisfying the debt to pay which the property was pledged.

APPEAL from the district court of Kearney county. Heard below before BEALL, J.

The facts are stated by the commissioner.

*Switzler & McIntosh* and *J. L. McPheely,* for appellants:

If a person contract with a partnership to contribute his services to the enterprise, for which he is to be compensated by a proportion of the profits, he becomes a member of the firm and liable for its debts, although he

does not stipulate to bear any part of the losses. (*Strader v. White*, 2 Neb., 349; *Gibson v. Smith*, 31 Neb., 354; *Harvey v. Childs*, 28 O. St., 319; *Wood v. Vallette*, 7 O. St., 173; *Leggett v. Hyde*, 58 N. Y., 272.)

Partnership creditors are entitled to preference as to partnership property. (*Tolerton v. McLain*, 35 Neb., 725; *Rothell v. Grimes*, 22 Neb., 526; *Caldwell v. Bloomington Mfg. Co.*, 17 Neb., 489; *Roop v. Herron*, 15 Neb., 74; *Bowen v. Billings*, 13 Neb., 439; *Powers v. Large*, 69 Wis., 621.)

Firm property is bound where a partnership claim is reduced to judgment against only known member of the firm. (*Martin v. Davis*, 21 Ia., 535.)

When credit is given to one member of a firm exclusively the partnership is not bound. The debt is an individual one of the partner to whom credit was given, even though consideration goes into the firm business. (*Sylvester v. Smith*, 9 Mass., 120; *Pollock v. Williams*, 42 Miss., 88; *Willis v. Rector*, 1 C. C. A. [U. S.], 611; Parsons, Partnership, sec. 104; Bates, Partnership, sec. 446.)

A bank is chargeable with notice of facts affecting a transaction of which an officer acting for it in the transaction had knowledge. (*Bank of New Milford v. Town of Milford*, 36 Conn., 100; *Brothers v. Bank of Kaukauna*, 54 N. W. Rep. [Wis.], 786.)

Statements to a commercial agency are binding upon the parties making the same when communicated to others. (*Genesee Savings Bank v. Michigan Barge Co.*, 17 N. W. Rep. [Mich.], 790.)

Garnishment notice may be served upon corporations, either foreign or domestic, by service upon chief officer or managing agent. (*Chicago, B. & Q. R. Co. v. Manning*, 23 Neb., 557; *Porter v. Chicago & N. W. R. Co.*, 1 Neb., 15; *Conahan v. Cullin*, 2 Dis. [O.], 1; *Hebel v. Amazon Ins. Co.*, 33 Mich., 400.)

*G. Norberg* and *A. H. Burnett, contra.*

*Charles Offutt*, for plaintiff.

RAGAN, C.

The Bank of Wilcox is a banking corporation created under the laws of the state and domiciled at Wilcox, Nebraska. For some years prior to 1890 Henry Wilcox was the cashier of said bank, and during the time he was such cashier he became indebted to it in about the sum of $30,000. In April, 1890, at said village of Wilcox, Henry Wilcox embarked also in the business of buying and selling lumber and such other material as is usually kept in a country lumber yard. The business was conducted and carried on under and by the name of the "Wilcox Lumber Company." Henry Wilcox furnished all the money that went into the business and owned the entire property embarked in the venture. D. C. Shetler had the supervision of the lumber yard, made sales, made collections, and looked after the business generally; but he did not own any part of the property embarked in the business; he was not responsible for any loss that the venture might suffer, nor any of its debts; he had no right to control or dispose of the property and venture, otherwise than as an ordinary retail salesman, and his only interest in the property or what it might earn was that he was to have one-half of the profits of the venture as compensation for his time and services. On the 8th of April, 1891, the Wilcox Lumber Company, as an evidence of a debt which it owed the Bank of Wilcox for money borrowed and invested in the lumber business, executed and delivered to said bank its note for $4,000, due in ninety days. On the 1st of January, 1892, Henry Wilcox was superseded as cashier of the Bank of Wilcox and one Hopkins was elected cashier in his place. The lumber and other material belonging to the Wilcox Lumber Company was insured against loss or damage by fire in the Ætna Insurance Company and another. On the 2d of February, 1892, the insured property was destroyed by fire. On the 3d day of February, 1892, Henry Wilcox delivered to the Bank of Wilcox the policies of

insurance which the insurance companies had issued to the Wilcox Lumber Company. The delivery of these policies to the Bank of Wilcox by Henry Wilcox was made and accepted for the purpose of securing the payment to the bank, out of the proceeds of said policies, of the note, and the interest thereon, which the lumber company had given to the bank on the 8th of April, 1891, said note being long past due and wholly unpaid. At the time that these policies were delivered by Henry Wilcox to the bank, and the latter authorized to collect the amount of the policies and apply the proceeds thereof on the payment of the note owing by the lumber company to the bank, no formal written assignment by the Wilcox Lumber Company was made on either of said policies, but on the 23d of February, 1892, the insurance policies were duly assigned and transferred in writing to the Bank of Wilcox by the Wilcox Lumber Company, by Henry Wilcox. Certain judgment creditors of Henry Wilcox claimed to be entitled to the proceeds of the insurance policies and the Bank of Wilcox also claimed to be entitled to said proceeds, and thereupon such proceedings were had that the insurance companies paid the amount of the policies, $4,000, into the district court of Kearney county and were discharged from any further liability in the premises. The Bank of Wilcox bases its claim to said fund on the deposit with and assignment to it of the insurance policies made on February 3 and 23, 1892, as already stated. It alleged in its pleadings that Henry Wilcox, doing business as the Wilcox Lumber Company, was on the 3d and 23d of February, 1892, indebted to it in the sum of $4,000 and a large amount of interest for money which the bank had loaned the Wilcox Lumber Company, and which it had used in its lumber business; that said debt was long past due and wholly unpaid, and that to secure it the payment of that debt the Wilcox Lumber Company (Henry Wilcox) had delivered and assigned to it the said insurance policies. The Chicago Lumber Company and a number of others having ob-

tained judgments against Henry Wilcox for lumber and other materials which they alleged they had sold and delivered to him while doing business under the name of the Wilcox Lumber Company, also claimed the fund in controversy. The district court found specially that on the 23d day of February, 1892, the Wilcox Lumber Company assigned the insurance policies in question to the Bank of Wilcox, with authority to collect the same and apply the proceeds thereof to the payment of the amount due to the Bank of Wilcox from the Wilcox Lumber Company, which at that time exceeded the sum of $4,000 and which at the time the decree was rendered had not been paid. There was a general finding in favor of the Bank of Wilcox and against the Chicago Lumber Company and other judgment creditors of Henry Wilcox, and a decree that the fund in controversy should be paid to the Bank of Wilcox. From this decree the Chicago Lumber Company and other creditors have appealed. Two arguments are relied upon to reverse the decree appealed from.

1. As already stated, while Henry Wilcox was cashier of the Bank of Wilcox he became largely indebted to the bank. This indebtedness was in addition to what he owed the bank under and by name of the Wilcox Lumber Company. On the 1st of March, 1892, he had an accounting or a settlement with the Bank of Wilcox. In this settlement an itemized statement was made of the debts which he owed the bank, and on that date he assigned to the bank, to secure the indebtedness, a large number of securities. In this statement the debt which he as the Wilcox Lumber Company owed the bank was also recited, and among the securities pledged to the bank to secure his debt was also recited the insurance policies in controversy, which had been previously delivered and assigned to the bank, as already stated. The first argument made here is that this assignment of certain securities and property on the 1st of March, made by Henry Wilcox to the Bank of Wilcox, was fraudulent and void,

and made and accepted for the purpose of hindering and delaying the other creditors of Henry Wilcox; and since the insurance policies were mentioned in said writing of the 1st of March, 1892, that therefore the assignment of the policies to the bank was fraudulent. There are two answers to this argument: (1.) As we have already seen, the title of the Bank of Wilcox to the insurance policies in no manner depends upon what was done on the 1st of March, 1892, between the Bank of Wilcox and Henry Wilcox. The writing entered into between the Bank of Wilcox and Wilcox on that day did not have the effect to validate the title of the bank to the insurance policies in controversy, if the bank's title to those policies was defective at that time; and as the bank at that time held possession of the insurance policies and it had a valid assignment of them, nothing that occurred between the Bank of Wilcox and Henry Wilcox on the 1st of March had the effect of invalidating the title of the bank to said insurance policies. The transaction between the Bank of Wilcox and Henry Wilcox on said March 1 did not have the effect, nor was it intended to have the effect, of transferring to the bank the insurance policies previously issued to the Wilcox Lumber Company. At that time, and long before that time, the bank had acquired the possession and assignment of those policies. The most that can be said of the transaction between the Bank of Wilcox and Wilcox on the 1st of March, so far as the policies in controversy are concerned, is that they were mentioned and scheduled as among the assets turned over by Wilcox to the Bank of Wilcox to secure his indebtedness to it. (2.) It was not necessary for the district court to pass upon the validity of the sale and assignment of securities made by Henry Wilcox to the Bank of Wilcox on the 1st of March, 1892, in order to reach the conclusion and render the decree it did in this case. The evidence abundantly sustains the finding of the court that the policies in controversy were delivered and assigned by the Wilcox Lumber Company

(Henry Wilcox) to the Bank of Wilcox to secure the payment to that bank of a debt of more than $4,000 which Henry Wilcox, under the name of the Wilcox Lumber Company, was owing the bank for money borrowed from it and used by him in the conduct of the lumber business; and there is not in all the record a single suggestion that either Henry Wilcox or the Bank of Wilcox was actuated with any fraudulent purpose whatever in and about the transaction of assigning these insurance policies to the bank. But if the district court made any finding whatever as to the good faith of the transaction between the Bank of Wilcox and Henry Wilcox on the 1st of March, it must have found that that transaction was in good faith. Whether the transaction was had with honest motives on the part of the bank and Wilcox, or whether it was for the purpose of hindering, delaying, or defrauding the creditors of Wilcox, was purely a question of fact and not of law. (See Compiled Statutes, ch. 32, sec. 20.) The evidence justified the district court in making a finding that that transaction was in all respects in good faith. Indeed, had the court found specially that the transaction between the bank and Wilcox on the 1st of March was made with a fraudulent purpose, it is very doubtful if the evidence would sustain such a finding. At the time of the transaction between the bank and Wilcox on the 1st of March, 1892, when Wilcox transferred to the bank certain securities, it is not pretended but that he was largely indebted to the bank.

2. A second argument relied on for a reversal of the decree is that the Wilcox Lumber Company was a copartnership, composed of Henry Wilcox and D. C. Shetler; that the debts of the appellants are copartnership debts; that the fund in court arising from the insurance policies is a copartnership fund, and that the debt owing to the bank by Wilcox was the individual debt of Henry Wilcox; and that, therefore, the appellants are entitled to have the fund in court paid upon their claims to the exclusion of the claim of the Bank of Wilcox. There are

several things to be said of this contention. (1.) If the Wilcox Lumber Company was a copartnership, then, of course, the claims of the appellants were copartnership debts; but if the Wilcox Lumber Company was a copartnership, then its debt to the bank was a copartnership debt; and the court has specially found that the fund in controversy was pledged by the Wilcox Lumber Company to pay its debt to the bank. (2.) If the Wilcox Lumber Company was a copartnership, it had a right to prefer one of its creditors to the exclusion of another, provided the preference was made and accepted without any fraudulent purpose. A copartnership does not hold its property in trust for its creditors, nor have creditors a lien upon the property of a copartnership simply because they have given it credit. Therefore, if we assume counsel's contention to be correct, that the Wilcox Lumber Company was a copartnership, composed of Henry Wilcox and Shetler, we do not see how that would help the appellants' case. (3.) The only interest Shetler had in the property, as has already been stated, was that, as compensation for his time and services in attending to the business, he was to have one-half of the profits of the business. He did not own any part of the property embarked in the venture; he had no right to control or dispose of the property, except as an ordinary retail salesman; and he was not responsible for any loss incurred in the business nor for any of the debts of the business. We think, therefore, that he was not a partner. "The receipt by a party of a share of the profits of a venture merely as compensation for services, such party having no interest in the property made the subject of the venture and no power in the management or control of such property, does not constitute such person a partner." (*Waggoner v. First Nat. Bank of Creighton*, 43 Neb., 84, and cases there cited; *Gibson v. Smith*, 31 Neb., 354.)

3. Counsel for the appellants insist that the evidence does not sustain the finding of the court that the insur-

ance policies were pledged to pay the debt which the Wilcox Lumber Company owed the bank. We think it does; but it is only fair to counsel to remark that if the evidence did not sustain that special finding of the court, and if the further contention of counsel be admitted, namely, that the bank had collected from property turned over to it by Wilcox a larger amount of money than Wilcox, under the name of the Wilcox Lumber Company, owed the bank, still the decree of the court would have to be sustained; because, as we have already seen, the Wilcox Lumber Company was simply Henry Wilcox, and whatever that lumber company owed the bank, he owed it; and if all the property pledged by Wilcox to the bank was a general pledge to pay his debts generally to the bank, then the appellants were not entitled to the fund in court, any more than they would have been entitled to any other part of the fund arising from the pledged property. So long as the debt of Wilcox to the bank remains unpaid, it has the right to hold all the property pledged to it to secure the payment of that debt, and other creditors of Wilcox cannot take a part of the fund pledged solely because the remainder would probably be sufficient to pay the debts of the pledgor. Of course the appellants may, if they desire, garnish the Bank of Wilcox and compel it to account to them for any surplus that may remain in its hands after the discharge of Wilcox' debt to it; but they are not entitled to a part of the pledged property simply because the remainder is probably sufficient to pay the debt for which the property is pledged. The district court was right in its conclusion and its decree is

AFFIRMED.