CASE 85—ACTION BY HERMAN GOEPPER & CO. AGAINST THE PHOENIX
BREWING CO. TO RECOVER THE AMOUNT OF THREE NOTES, AND FOR
AN ATTACHMENT AGAINST DEFENDANT'S PROPERTY.—MAY 29.

# Herman Goepper & Co. v. Phoenix Brewing Co.

### APPEAL FROM JEFFERSON CIRCUIT COURT. CHANCERY DIVISION.

JUDGMENT FOR DEFENDANT AND PLAINTIFFS APPEAL. (REVERSED.

PLEDGES—PARTIAL PAYMENTS—RETENTION OF COLLATERAL—EXECU-
TION—UNFINISHED BEER—MORTGAGES—PRIOR LIENS—MARSHAL-
LING ASSETS—ATTACHMENT—GROUNDS—EVIDENCE.

Held: 1. Where bonds were deposited as collateral for notes in
which no provision was made requiring a *pro tanto* release of
the collateral on partial payment being made, the creditor was
entitled to hold the entire collateral as security for the balance
of the debt.

2. Unfinished beer in a state of intermediate fermentation is not
subject to execution or attachment.

3. Where property mortgaged by a brewing company was insufficient
to pay this mortgage and overdue taxes, and debts owing to
laborers and material men, which were entitled to priority, and
which were also liens on unincumbered property, the mort-
gagees were entitled to have such unmortgaged property first ap-
plied to such tax and labor liens before subjection of the mort-
gaged property thereto.

4. Facts HELD sufficient to sustain an attachment on the ground
that defendant did not have enough property in the State sub-
ject to execution to satisfy plaintiff's demand.

5. Where, for several years prior to the levy of an attachment, de-
fendant had been losing heavily, and for the first ten months
of the year of the attachment its net losses were over $20,000,
and the day after the attachment was levied defendant assigned
all his property for the benefit of creditors, and was hopelessly
insolvent, such facts were sufficient to warrant an attachment
on the ground that the collection of plaintiff's demand would
be endangered by delay in obtaining judgment or return of no
property found.

6. Ordinary sales of beer in usual quantities, in the regular course
of a brewer's business, to customers outside the State, with-

Herman Goepper & Co. v. Phoenix Brewing Co.

out anything to indicate a purpose to remove the property from the State, to get the same beyond the process of the court and the reach of creditors, is insufficient to justify an attachment on the ground that the debtor has removed its property, or a material part thereof, without the State, not leaving enough therein to satisfy his creditors.

AUGUSTUS E. WILLSON, COUNSEL FOR APPELLANTS.

### POINTS AND AUTHORITIES.

1. Under section 194, subsection 6 of the Civil Code, the value at which defendant's property would sell under execution is the true criterion in estimating whether it has enough subject to execution to satisfy the claim. Powell v. Cummins, 7 Ky. Law Rep., 361; Gray v. Robinson, 9 Ky. Law Rep., 766; Haynes v. Wiley, 12 Ky. Law Rep., 300; Helmers, &c. v. Klehammer, 19 Ky. Law Rep., 1005.

2. This valuation is to be ascertained by the court from the opinions of witnesses. Haynes v. Wiley, 12 Ky. Law Rep., 299.

3. In considering this question, the court is not bound by the finding of the chancellor, but will consider the evidence and decide for itself the correctness of the judgment appealed from. Bardmaker v. Johnson, 21 Ky. Law Rep., 354.

4. The whole *eleven* third mortgage bonds were pledged for *each* of plaintiffs' *five* notes. The chancellor held that that mortgage was likely to pay about forty per cent. of the par value, which he fixed at $4,500 on $11,000, and in considering whether "the collection of plaintiffs' demands would be endangered by delay in obtaining judgment or a return of no property found," held that to that extent of $4,500, plaintiffs' debt on the *three* notes that were due could not be endangered, and treated it as a payment instead of a security, and applied the whole of it to the three notes that were past due and then found that there was property of defendant subject to execution sufficient to satisfy the balance of those first three notes. It was error to treat this security as payment at all. It was an error for the *court* to elect to which of the notes the proceeds of the bonds, all of which were pledged for each note, should be applied and to apply it, without plaintiffs' wish or consent, to the three notes that were past due. The plaintiffs had the right to elect to which notes it should be applied, and there could be no possible ground, even if plaintiffs had not made the application, for applying the whole collateral security for the *five* notes to the first *three* that had become due, in order to defeat the attachment.

5. Plaintiff's right to attachment was not impaired by their holding the third mortgage bonds as collateral security for their debt or a part of it. They had a right to attach for their whole debt, regardless of collateral. Branshaw v. Tinsley, 23 S. W. Rep., 185, (Texas); Beckwith v. Sibley, 11 Pick., 483; Whitwell v. Brigham, 19 Pick., 117; Porter v. Brooks, 35 Cal., 195; Homer v. Falconer, 60 N. H., 203; Shindler v. Hayden's Admr., 8 Ky. Law Rep., 861; Garr v. Lyons, 99 Ky., 677.

6. The court erred in deducting $10,971 unpaid taxes from the estimated value of the encumbered real estate and fixtures instead of from the estimated value of the unincumbered personalty. Kentucky Statutes, secs. 4022, 4143, 4148, 4150, 4151; Smith v. Mitchell, 9 Ky. Law Rep., 813; Wheeler v. Braemel, 10 Ky. Law Rep., 301; Julian v. Stevens, 10 Ky. Law Rep., 862; Cooley on Taxation, p. 454.

7. At best, appellants, by levy of execution upon the unmortgaged personalty, could obtain only a lien, which the tax collector could defeat by distraint, and the employees and material men could exhaust by their statutory liens amounting to $16,250.

8. In determining whether defendant has sufficient property to satisfy the demand, liens must be deducted. Stucky v. Brown, 11 Ky. Law Rep., 404. And this unmortgaged property was subject to these tax liens, which could be enforced by distraint, and statutory liens for wage and materials enforcible by suit, and as these taxes must be made first of the personalty, the court below erred in deducting it from the realty and in counting the unmortgaged personalty as free from lien, and its value as subject to execution.

9. The liens, amounting to $16,250 for wages and materials in this manufacturing establishment, were not secured by mortgage and would therefore be applied first to the unmortgaged personalty. Kentucky Statutes, secs. 2487, 2488, 2490.

10. The unfinished beer in process of fermentation was counted by the court as a part of the property subject to execution, constituting sufficient to satisfy plaintiffs' demand, at the value of $8,197, in the face of a stipulation (Testimony, p. 273), that, "The defendant admits that in its then condition, *it was not a marketable commodity;* that there was no demand for it in Louisville, and that if it had to be separated and taken away from the brewery, it had no value at all," and as to which there was no contradiction of the stipulation and evidence that it had no value, excepting that one or two witnesses testified that the owners of breweries, in taking stock to show their condition for their own use, value unfinished beer at $1.50 a bar-

rel in the brewery. The chancellor should not have counted this beer as of any value within the meaning of the provision of the code, in ascertaining whether defendant had sufficient property subject to execution to satisfy plaintiffs' demand. Gray v. Robinson, 9 Ky. Law Rep., 766; Haynes v. Wiley, 12 Ky. Law Rep., 300; Helmer v. Klehammer, 19 Ky., 1005; Powell v. Cummins, 7 Ky., 361. It is, therefore, the value of this property for sale under execution which must be determined, and not the value at which it is taken in the brewery bookkeeping.

11. If the unfinished beer was property subject to execution to satisfy plaintiffs' demand, the value must be determined with reference to the duty of the sheriff to sell it in the condition in which it was levied upon, without any right of the sheriff to complete the manufacture or process of fermentation, or to use the brewery for that purpose, just as the selling value of a growing crop has been held to be as of the regular time for selling under the levy under the execution, instead of the time of finishing the crop. Craddock v. Riddlesberger, 2 Dana, 206.

12. The unfinished beer is not subject to execution. This rule is in harmony with the policy of the State shown in the statute, section 1696 against levying on unripe crops. Drake on Attachments, secs. 249-250, and cases there cited; Shinn on Attachment, sec. 208; Waples on Attachment, 285-286.

The sheriff had no authority to complete the manufacture of beer; it required a statute to authorize him to feed live stock levied on, and the lower court erred in extending the court's power, under the attachment sections to provide for the preservation of *attached* property, to property levied on under *execution* and in holding that as the court had the power to provide for such preservation under *attachments*, therefore the unfinished beer should be held to be worth enough to satisfy plaintiffs' demand under *execution*, because it could be preserved under an attachment, a manifest confusion of ideas.

It is plain that the same reason which would exempt the unfinished beer from execution, would exempt it from attachment. In other words, as far as the effect on the beer is concerned, the effects of attachments and executions are the same, and therefore authorities which hold that attachments can not be levied on unfinished beer, dough, glass in melting pots, hides in tanning vats, etc., would be authority for the position that execution could not be levied on beer in fermentation, dough, glass in the melting pot and so on, and the authorities are numerous that such articles in such a stage of manufacture, that they have no marketable value, are not subject to levy of at-

tachment. Waples, sec. 228; Kentucky Statutes, cited above as to growing crops.

Our Kentucky exemption statutes. place in one class, execution, attachment, distress and fee bill. The Code, sections 641 to 660 apply alike to executions and distress warrants, and distress warrants can not be levied on unfinished beer, dough, etc. Amer. & Eng. Ency. of Law, vol. 9, p. 642.

13. The sale of $1,600 worth of beer to a customer in Bedford, Indiana, during the year 1897, was a removal of a material part of defendant's property out of the State, not leaving enough to satisfy the claim of defendant's creditors, $405,969.89. Waples, sec. 61, p. 45 and cases there cited; Nutter v. Connett, 3 B. M., 199; Mackey v. McDaniel, 2 McCreary, 498; Stephenson v. Sloan, 65 Miss., 407; Queen City v. Blalock, (Miss.), 31 L. R. A., 222; Richardson v. Samuels, 64 Miss., 822; Crowe v. Lemmon, 69 Miss., 799.

PHELPS & THUM AND GIBSON, MARSHALL & GIBSON, FOR APPELLEES.

### POINTS AND AUTHORITIES.

1. The thirteen points of the appellants briefly considered. Mechanics' liens of laborers and material men do not attach until the assignment takes place. The taxes are secured by liens upon the property and have been fully considered by the court in its estimate. The opinion of the court takes up and disposes of the questions raised as far as they are material, except the new point that the beer was not subject to execution.

2. There was unincumbered property subject to execution beside the beer and in addition thereto of the value of $8,214.32.

3. The beer was made up of 100 barrels finished, 260 barrels in fermentation, 3,125 barrels in ruh, and 2,080 barrels in chip, casks. Thus the beer was nearly all in a finished condition. According to defendant, its value was $17,000. This beer was subject to attachment and was subject to execution. Parham v. Thompson, 2 J. J. Mar., 159; Sims v. Jones, 75 N. W., 150; Craddock v. Riddlesberger, 2 Dana, 206; Thompson v. Cragmile, 4 B. M., 392; Farmers' Bank v. Morris, 79 Ky., 158; Hill v. Harris, 10 B. Mon., 120.

4. The value of the beer must be estimated according to the ordinary standards of men of ordinary prudence in like business. The contention of the plaintiffs, made for the first time in the court of appeals, was that beer was not subject to attachment or execution, thus taking a diametrically opposite po-

sition to that taken in the trial court. The authorities do not sustain this contention. Appellants then rely upon what they contend to be the worthlessness of the unfinished beer if subject to levy and execution. But it is well settled in this State that the sheriff may, if he see proper, leave the beer in the possession of the defendant. Lampton v. Taylor, Litt. Sel. Cases, 277; Huston v. Duncan, 1 Bush, 207; McBurney v. Overstreet, 8 B. M., 304; Hill v. Harris, 10 B. M., 120.

In estimating the value, therefore, the court is not necessarily confined to a consideration of what might result if the sheriff, without any precautions, took the beer away, put it in a warm place and allowed it to be destroyed. Vance v. VanArsdale, 1 Bush, 507.

The court had a right to consider the value of this beer under the probabilities and indeed, certainties, of the case, that is, that some one would be found to finish it in its nearly finished condition, either the defendant or the plaintiff in the case, and that therefore, it had a value—a sale value, and execution value.

5. The attachment in this case was against the two contracts which the plaintiffs (appellants) signed, and they were disabled from bringing such a suit by the very terms of the trust which they created, placing all the assets of the defendant in the hands of their chosen trustees. There had been no breach of the terms of the trust and no excuse afforded plaintiffs on which to bring an attachment. They are estopped. Drake on Attachment, secs. 526 and 527; Bartlett v. Rogers, 3 Sawyer, 62 (Fed. Cas., No. 1079); Brown v. Farnham, 48 Minn., 317, 51 N. W., 377; Brown v. Stackpole, 9 N. H., 478; Mullin v. Martin, 23 Mo. App., 537; Dolsen v. Arnold, 10 How. Pr., 528; Orr v. McEwen, 1 City Ct. Rep., 144; Bartlett v. Woodward, &c. Co., 41 A., 264; Bowens v. Stewart, 59 N. Y. S., 721, 28 Misc. Rep., 475; Robert v. Barhum, 80 Ky., 28; Burnham, v. Walker, 1 White, &c., 70 Cir. Cas. Ct. App., 901; Continental Nat. Bk. v. Koehler, 4 N. Y. St. Rep., 482; Eaton v. Lincoln, 13 Mass., 424; Goodrich v. Lincoln, 93 Ill., 359; Devoro v. Ham., 17 Ind., 472; Lambert v. Shetler, 71 Iowa, 463, 32 N. W., 424; Schroeder v. Pissis, 60 P., 758, 128 Cal., 209; Gage v. DeCourcy, 41 A., 183; Hill v. Wertheimer, &c. Co., 51 S. W., 702; Stewart v. Langston, 30 S. E., 35; Loomis v. Wainwright, 21 Vt., 520; Fellows v. Stevens, 24 Wend., 294; Cutter v. Reynolds, 47 Ky. (8 B. Mon.), 596; Martin v. Taylor 52 Ark., 389, 12 S. W., 1011; Hill v. Wertheimer, 51 S. W., 702, (Mo.); Herman on Estoppel, vol, 2, p. 1152, sec. 1024.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

Appellee was indebted to appellants in the sum of $11,-000, besides interest, evidenced by five notes for $2,200 each, all dated October 1, 1894, and maturing, the first one 11 months after date, the others at intervals of one each year thereafter. They were secured by collateral, 11 bonds of $1,000 each, which were secured by a third mortgage on appellee's brewery. These 11 bonds were of a series, representing $94,900, issued to a trustee for debts owing by appellee. There was a first mortgage of $50,000, and a second mortgage of $100,000. Appellee defaulted in paying three of the $2,200 notes to appellants. Appellants brought this suit to recover $7,822,68, the amount of the three notes and interest past due, and obtained an attachment against appellee's property on the ground (Civ. Code, section 194, subd. 2) that appellee had not enough property in this State subject to execution to satisfy the plaintiffs' demand, and that the collection of the demand would be endangered by delay in obtaining judgment or a return of no property found. Appellants also joined in the suit an action for indemnity under section 238, Civ. Code, for the two notes not due, on the ground that the defendant was about to remove or had removed its property, or a material part thereof, out of this State, not leaving enough therein to satisfy the plaintiff's claim or the claims of said defendant's creditors. All of appellee's property was not included in the mortgages. Its brewery was. This included all its real estate, consisting of the brewing plant at Louisville, and much of the personal property. Other personal property, not embraced by the mortgage, was of the value of about $2,545, not including beer in various stages of manufacture. The chancellor found against plaintiffs on all their grounds of attachment. Their appeal presents three questions for our

consideration. (1) Had defendant enough property in this State subject to execution to satisfy plaintiffs' demand; (2) Was their demand in danger from further delay? (3) Was the sale of its beer, not in unusual quantities, to regular customers out of the State, by an insolvent brewer, a ground for attachment?

1. The circuit court, in fixing the values upon appellee's property, has seen fit to adopt the maximum valuations from among those of witnesses materially varying. Whether we are fully justified in following his course, in view of all the evidence, may be doubted. Yet we incline to follow a rule of this court which gives some weight to the chancellor's finding of facts, and, in cases of grave doubt, his findings will not be disturbed. The chancellor fixed the value of buildings, ground, and machinery (all covered by the three mortgages) at $210,705. The first and second mortgages alone amounted then to $158,249. Besides, there was owing a purchase money lien of $3,000, making $161,249. This would leave an apparent balance of $49,456. But it must be remembered that this same property was subject to a third mortgage of $94,900, which, with accrued interest, then amounted to, say, $111,000. Thus we have $49,456 to pay $111,000 of lien, or say, 45 per cent. of that item. Of this sum ($49,456) appellants, as holders of 11 of the third mortgage bonds, all of which were pledged to secure all the appellants' notes, were entitled to receive $5,841. But that, at best, was only an estimation, which, when the practical test of foreclosure sales come to be applied, would, viewed from the evidence, likely fall short of realization in fact. Conceding that appellants' proportion of the $49,456 equity in the mortgaged property was worth $5,841 in fact, where, in law, should it be applied? The learned chancellor applied the whole of it to that part of the debt due.

In this we think he erred. Appellants were entitled to payment of the whole of their debt. If partial payments had been made by appellee it would not have released *pro tanto* any of the collateral, there being no clause in the notes to that effect; but the security would have remained upon the balance of the debt. Without deciding whether appellants might have ignored their security and proceeded at law to collect the whole of their debt, it was certainly their privilege to collect out of the debtor's other estate all of the debt due and not secured—that is, not covered by the value of the security. So, if the value of the security was $5,841, then only a small part of the debt due was really secured, because the part not due, and its interest, consumed all the value of the collateral except about $700.

If a creditor have even more collateral in value than his debt, he will not be compelled to yield any of it to the debtor until the whole of the debt is paid. Union Bank v. Laird, 2 Wheat, 390, 4 L. Ed., 269; Pollock's Adm'r v. Smith (107 Ky., 509, 21 R., 1227), 54 S. W., 740; Aetna Life Ins. Co. v. Wilcox Bank, 48 Neb., 544, 67 N. W., 449. This is not the case where a payment is made to a creditor holding several debts, in which the law would apply it to the debt past due. There was no payment here. There was no property, or, what is the same thing, no value in appellee's property, covered by the mortgages, which it could have applied, or required the application of, to the payment of appellants' debt of $7,822.68, unless it be the estimated balance of $700, and whether that could be applied without actual payment, so as to defeat their right of action for the whole debt due, is not necessary to be decided. The personal property not embraced by the mortgages consisted of horses, wagons, harness, machinery and goods in bottling department, all valued at $2,545.31. Added to this

was a quantity of beer, 100 barrels of which was finished, having a market value of $5.40 per barrel, after paying the United States government tax of $1 per barrel. This would produce $3,085 of personal property undoubtedly subject to execution. In addition to this, appellee had 5,465 barrels of beer in the several stages of manufacture, of which 260 were in the fermentation state, 3,125 in the ruh state, and 2,080 in the chip state. None of these was a marketable condition. In each of them something must be added, especially in the way of skilled labor and attention, to make the beer worth anything as a marketable commodity. Especially did it require a brewery, with necessary vats, tubs, and cold storage compartment, all of great cost, and all necessary to be operated to complete the process by which this beer would ever become available as a salable article. The learned chancellor proceeded upon the theory, in estimating the value of this crude beer, that it was a valuable property, and that whatever value it had must be considered in finding whether appellee had enough property subject to execution to pay appellants' debt. In the first place, all valuable property is not subject to sale under execution. For example, certain equitable interest in land, debts owing the execution defendant, choses in action generally, and so on. They may go, and do, toward constituting the debtor's solvency. But neither his solvency nor insolvency are regarded in determining whether he has enough property subject to execution to pay plaintiff's debt. McFerran v. Jones, 2 Litt., 222; Rich v. Catterson, 2 J. J. Marsh., 135; Wooley v. Stone, 7 J. J. Marsh., 302; Russell v. Robinson, 7 Ky. Law Rep., 361; Hickman v. Reed, 11 Ky. Law Rep., 406.

The question comes down to the point: What property has the debtor in this State subject to execution? Gener-

ally speaking, any species of personal property described as a chattel is subject to levy and sale under the writ of execution. But it must be in esse at the time of the levy and sale. Formerly, growing crops, the product of the labor of the tenant, and raised annually by cultivation, were the subject of execution. Craddock v. Riddlesberger, 2 Dana, 205; Parham v. Thompson, 2 J. J. Marsh, 159. This has, however, been changed by statute. Section 1696, Ky. St. 1899. It may be argued that, in view of the fact that the Legislature had not exempted other imperfect and immature things from similar sale, that is evidence that the legislative policy is not to exempt them. This argument would have peculiar force if such property had ever been held subject to execution sale. But it has not been, so far as we are advised. We have nothing to do with the argument of inconvenience in the case. The matter comes to whether the property proposed to be sold has a salable quality. Perhaps that could be best tested after an attempt to sell had been made. But such articles as molten iron, or glass in the furnace, burning charcoal in the pit, and coke in the ovens, or baker's dough, or brick in a burning kiln, hides in the vat, and beer in a state of fermentation, while undeniably having the qualities of chattels, are nevertheless in such imperfect state of transition from one thing to another that they really can not be said to be either. Without further labor, and generally artistic or skilled labor, and the use of the realty, and the combination or mixture of other articles, they are practically worthless. The officer could not take them into possession, nor could he separate them from the bulk of which they are a part, without destroying, perhaps, not only what he took, but probably much in addition, of even greater value. While doing the creditor no good, he would be utterly destroying the debtor.

There can be no sense in allowing such an act. Although, in levying upon unwieldy objects, the officer may leave them in the debtor's possession, or in the possession of another (Hill v. Harris, 10 B. Mon., 120, 1 Am. Rep., 542), he could not require such person, against his consent, to give them further attention, and to put upon them his labor, time and experience. It has been long since the creditor could force his debtor to involuntarily work for him. The facts of this case fairly illustrate such a situation: Five thousand barrels of beer in the tubs are levied upon. In its then state it will require on an average of four to six weeks' time and attention to perfect it so that it will have any market value whatever. To give it the necessary attention requires a plant worth $200,000; the labor and attention of a large and expensive force of workmen, more or less skilled in the trade of making beer; and the addition from time to time of other material than that already embraced in the beer when levied upon. When so completed, it would be worth $5.50 per barrel. In its then state, even allowing the privilege of such use and services, it was worth not exceeding $1.50 per barrel. Without the privilege of using the brewery, and without the labor and attention mentioned, it would be without any value.

In this State the ancient writ of *fieri facias* is allowed by statute, subject to but few exceptions in its former operations. One of them is that it can not be levied upon growing crops, as formerly allowed. Another is, it must be first satisfied out of the personal estate of the debtor, if he have sufficient. Certain specified articles are exempted by statute, to a debtor who is a citizen with a family, from levy and sale under execution and attachment. But these latter are not excepted, as such, from the operation of the writ of execution, so much as that their quantity is exempted from

sequestration for debt at all. Drake on Attachments, sections 249, 250, and Waples on Attachments, sections 285, 286, are authority, and cite cases as well in support of it, that such unfinished product as that levied upon in this case is not and in justice ought not to be subject to levy and seizure under attachment or execution. As to the similarity of the writs, Waples says (section 228): "The writ of attachment issued at the beginning of a suit is really a preliminary execution, dependent for its ultimate efficacy upon the rendering of the judgment in favor of the plaintiff. . . . It has all the characteristics of an execution in the first stage."

Unfinished beer in the state of intermediate fermentation is not leviable under an execution, because, if the sheriff were so minded, he could not take it into his actual custody without destroying its nature and value. He can not, as to it, satisfy the general rule as to what constitutes a good levy, viz., "that the officer must do such acts as would subject him to an action for trespass but for the protection of the execution." McBurnie v. Overstreet, 8 B. Mon., 303. While he might leave it with the defendant, yet the defendant may also refuse to be responsible for it, or to give it room or attention. It is not satisfactory to say that the officer would generally wait till the product was so completed as to be marketable. The officer can no more be compelled to wait than can the debtor be compelled to work for his creditor. Nor should the sheriff be required to turn brewer, for which he has provided him neither the equipment, nor the necessary means, nor experience, probably, nor help, nor the time, without neglecting all other public duties. So the question must be determined as of any hour before the product reaches a salable condition. Public policy, which looks to the public welfare, forbids that

the law's process, intended for the aid of creditors, and not for the punishment of debtors, should be perverted in its use by the creditor to such ruinous ends to the debtor, with no benefit to any one. Such property of a debtor can be reached by the law and subjected, in a proper case, by having a receiver appointed to take charge of it and perfect it. Adequate authority and means are to be had for such action.

But even had the beer in its unfinished state been subject to a seizure, its then value, as fixed by the chancellor, $1.50 per barrel, making $8,197, added to the other unincumbered personal property, of $3,085 value, above named, would have yielded but $11,282 of property *prima facie* subject to execution. Appellee owed at that time overdue taxes of $10,971, which by statute was a first lien upon all the property. Besides, it owed to laborers and materialmen over $16,000. Under sections 2487, 2488 and 2490, Ky. St. 1899, whenever the property of a manufacturing establishment in this State is assigned for the benefit of creditors, or is taken in custody under execution or attachment for debt, materialmen who furnished it supplies, and the employes of the owner in such business, have a lien upon the whole plant and effects involved in such business for the whole of the amount due them for their labor and supplies. In the marshaling of liens, the mortgagees, finding the property mortgaged to them insufficient to pay these charges and their mortgages, would have the right to require the holders of the tax liens (which by express mandate of the statute must first be satisfied out of the personal estate), and the holders of the materialmen and labor liens who have liens on both mortgaged and unmortgaged property, to apply the unmortgaged property first to the satisfaction of their lien. Logan v. Anderson, 18 B. Mon., 119; Hibler v.

Davis' Adm'r, 13 Bush, 21; Bank of Ky. v. Vance's Adm'rs, 4 Litt., 175; Swigert v. Bank of Ky., 17 B. Mon., 285; Glass v. Pullen, 6 Bush, 349. This would have consumed the whole of the personal estate, leaving nothing subject to execution.

2. The day after the levying of the attachment, appellee assigned all its property for the benefit of creditors. It was hopelessly insolvent. Its liabilities were largely in excess of its assets, even when placing upon the latter a very high estimate. It had been losing heavily for several years. The first 10 months of 1897 (the year of the attachment) its net loss was nearly $20,000. Every day saw its liabilities increase, and its prospects growing worse. These circumstances are enough to warrant the finding that the collection of appellants' debt was endangered by delay in obtaining judgment or a return of no property found. Johnson's Assignee v. Lou. City Nat'l Bank (22 R., 118), 56 S. W., 710; Deposit Bank of Owensboro v. Smith (108 Ky., 311, 22 R., 808), 58 S. W., 792.

3. We are of opinion that the ordinary and customary sales of its manufactured product in not unusual quantities, in the regular course of business, to customers out of the State, is not enough to justify an attachment against an insolvent seller on the grounds that he has removed his property, or a material part thereof, out of the State, not leaving enough therein to satisfy his creditors. There must be shown some purpose to remove the property from the State, so as to get it beyond the process of the court and the reach of the creditors, or removal in such unusual quantities as to reasonably suggest such a purpose.

The judgment is reversed, and cause remanded for proceedings not inconsistent herewith.