[No. 3291. Nov. 6, 1929.]

JONES-NOLAND DRILLING CO. v. BIXBY

[282 Pac. 382.]

Reese & Reese, of Roswell, for appellant.

Reid, Hervey, Dow & Hill, of Roswell, for appellee.

### OPINION OF THE COURT

BICKLEY, C. J. This is an action wherein plaintiff (appellee) caused to be atttached all the right, title, and interest of defendant (appellant) in and to "the real estate, oil-well, rig, pump equipment, oil and water storage tanks, and machinery situated upon and being the land described as," etc.

The case was tried before the court and judgment entered in favor of plaintiff against the defendant, together with costs of suit. The judgment further provided that, unless the judgment was paid immediately, the sheriff should sell the property attached "at public sale, under the laws and rules of this court relative to sales of property upon execution," etc.

After the property had been duly advertised for sale, the plaintiff and defendant entered into a stipulation whereby defendant paid the judgment and interest accrued, and a portion of the costs, and deposited in escrow in the First National Bank of Roswell the sum of $866.86 to cover costs found by the district court to be due, and provided for the disposition of said sum in a manner dependent upon the decision of said court.

Upon the hearing of plaintiff's motion to retax the costs, upon the evidence the court found as facts, among other things, that certain described land upon which said property of defendant was situated was leased from the state of New Mexico, and was evidenced by an ordinary

form of oil and gas lease, which, among others, contained the following provisions:

"And with the right of removing, either during or after the term hereof, all and any improvements placed or erected on the premises by the lessee, including the right to pull all casing, subject, however, to the conditions hereinafter set out.

"16. In drilling wells, all water bearing strata shall be noted in the log, and the lessor reserves the right to require that all or any part of the casing shall be left in any non-productive well when the lessor deems it to the interest of the State of New Mexico to maintain said well or wells for water. For such casing so left in wells, the lessor shall pay or cause to be paid, the lessee the reasonable value thereof."

"18. The lessee shall not remove any machinery or fixtures placed on said premises nor draw the casing from any well unless and until all payments and obligations due the lessor under the terms of this agreement shall have been paid or satisfied. The lessee's right to remove the casing is subject to the provisions of paragraph 16 above."

The court further found that said lease had been assigned to said plaintiff, and under the terms thereof an oil well was drilled that was, at the time of the trial, a commercial producing well; that said property of defendant was all attached to the real estate and used for the purpose of pumping oil from the well and for taking same to the pipe line, and with the intention on the part of the defendant that said property should be used in pumping and extracting oil from the oil well located on said leased land, so long as the well should produce oil in commercial or paying quantities; that the sheriff had charge of all said property and placed his agent there to look after the same; that the agent did not live right at the property, but some distance away, but visited it sufficiently to give it proper care and custody; that a caretaker or guard was necessary to protect said property; that the sheriff charged mileage to relieve the guard, $9.25; that the sheriff charged the full commissions as though the property had been attached, advertised, and sold, though such property was attached and advertised but not sold.

The court concluded as a matter of law from the facts found that the property in question was personal property, in that, under the original contract with the state, the les-

see had the right to remove the property from the leased land, it being the intention that the property should remain the lessee's, and that, under such circumstances, the property was personal and subject to attachment, and was properly in the care and custody of the sheriff; that the sheriff was only entitled to one-half of ·the fees given by law for the sale of property under attachment, for the reason that the property was not sold. The court allowed the item of $9.25 for mileage to relieve the guard.

Counsel for appellant have grouped their assignments of error into three fundamental questions, which they represent as the main issues involved. They are:

"I. Did the Court err in ordering taxed as costs in said cause, the per diem of guard, alleged to be in charge of the attached property from 12/2/25 to 6/4/26, 194 days at $4.00, $776.00?

"II. Did the Court err in ordering taxed as costs, Mileage to relieve alleged guard, 74 miles at 12½¢, $9.25?

"III. Did the District Court err in ordering taxed as costs, commission on collection of alleged execution 3 days before date set for sale.

½ of 4% of $500.00 _____ $10.00
½ of 2% of $3,134.17 _____ 31.34?"

We will consider these questions in the order stated.

Appellant's first point is based primarily upon the contention that the property attached in this case was real estate, and therefore no guards' fees could be taxed.

In determining whether personal property loses or retains its identity as a chattel by being placed on land, it is generally said that the intention of the parties is a controlling factor. 26 C. J. Fixtures, § 5. An agreement by the owner of the land in favor of the owner of the article at the time of annexation to the effect that the article may be removed as personalty operates to preserve the personal character of the article annexed. 26 C. J. Fixtures, § 39. Fixtures which are removable by the tenant under a lease have been decided to be subject to levy and sale as chattels on execution against the tenant. 26 C. J. Fixtures, § 123; 17 R. C. L. p. 119; note, L. R. A. 1915E, 829, 830.

Furthermore, while the court found that the property in question was situated on and attached to the real estate described in the lease and used for the purpose of pumping oil from the well and taking same to the pipe line, we agree with the trial court that it was not annexed to the interest in the real estate embraced in the leasehold. While an oil and gas lease, with the right of ingress and egress to explore for, discover, develop, and remove oil and gas, conveys an interest in real estate, it does not convey a greater interest in the soil, except the oil and gas, than to enable the owner of the lease to use the soil in carrying out and availing the leases of the above-named rights. The fee in the soil, except the oil and gas, remains in the lessor unincumbered with those rights of the lessee. The lessee is not the owner of the solids of the earth which the pumping and other equipment is annexed. He, at most, is the owner of the oil and gas, in place, and merely has the right to use the solid portion so far as necessary to bore for, discover, and bring to the surface the oil and gas. If the equipment were a part of the realty, it would not belong to the lessee, but to the lessor, with the same right in the lessee to use it as he has to use the other portions of the solid realty only. Moore v. Carey Bros. Oil Co. (Tex. Com. App.) 269 S. W. 75, 39 A. L. R. 1247.

Nor does the fact that the well is a producer alter the situation. In the case of a producing well, the interested parties doubtless have rights in having the casing remain intact, but this does not change the title to the casing nor its character as personalty because, if the well ceases to be a producer, the lessee would have the right to remove the same as his personal, individual property, subject to qualifying provisions in the agreement. See Orfic Gasoline Production Co. v. Herring (Tex. Civ. App.) 273 S. W. 944.

So we hold that the property involved in the case at bar was levied on, not as real estate, but as personal property.

Appellant asserts, in support of his first point, that a sheriff has no authority to charge custodian's fees in connection with a levy of a writ of attachment on real estate,

but, holding as we do that the property attached is not real estate, we need not discuss this question.

Further grounds argued in support thereof are that, even if the equipment is personal property and liable to attachment as such, the sheriff is not entitled to custodian's fees, for the reason that he did not seize and keep the same in his possession, and further that the charges were not reasonably necessary for which they were incurred.

The court found the facts contrary to these contentions and such findings, being supported by substantial evidence, will not be disturbed. The manner in which the duty was discharged is sufficient so far as the law is concerned. See 6 C. J. Attachments, §§ 591, 594, 595. We think the return to the writ of attachment is sufficient so far as its consideration in connection with the proposition here involved is concerned.

Appellant assails the item of traveling expense of the sheriff in relieving the guard in the amount of $9.25. In addition to the argument heretofore made, it is claimed that the charge is unreasonable. As we view the findings of the court, the contrary was found, and we are not convinced that the finding should be disturbed.

In support of his third proposition, appellant points to section 1267, Code 1915, as the only statute dealing with commissions which the sheriff may charge in cases where the sheriff has collected a judgment on execution, without making a sale of the judgment debtor's property.

The writ of attachment is in the nature of an "execution in advance." As to the similarity of the writs of execution and attachment, Waples on Attachment (2d Ed.) § 228, says:

"The writ of attachment, issued at the beginning of a suit, is really a preliminary execution dependent for its ultimate efficacy upon the rendering of judgment in favor of the plaintiff. It will be better understood by treating it as such. It has all the characteristics of a writ of execution in the first stage. The plaintiff may point out property to the officer. The officer may require security for indemnity in doubtful cases. The property seized comes into the lawful custody of the officer. Enough should be

attached to cover the alleged indebtedness of the defendant, without excessive margin. No greater loss should be imposed on the debtor than is reasonably necessary to do justice to the creditor and satisfy the other demands of the law. Competing attachments usually take rank in chronological order as in executions. The parallel will hold good in many other particulars. When judgment in favor of the attaching creditors has been obtained, his original writ merely requires an order of sale to render it equivalent to an execution—seizure having been made already."

The foregoing text is cited with approval in Herman Goepper & Co. v. Phoenix Brewing Co., 115 Ky. 708, 74 S. W. 726. In McGuire & Co. v. Barnhill, 89 Ark. 209, 115 S. W. 1144, it was decided that "executions" is a broader term than "attachments."

So, under the record in this case, we think the term "executions" as used in section 1267 of the Code is sufficiently broad to include attachment.

From all of the foregoing, it appears that the judgment of the trial court is correct, and must be affirmed, and the cause remanded, and it is so ordered.

WATSON and PARKER, JJ., concur.

CATRON and SIMMS, JJ., did not participate.