## Cannon Ball Cab & Bus Co. et al. v. Maryland Casualty Co. et al.

(Decided May 19, 1936.)

T. L. CREEKMORE and O. T. HINTON for appellants.

A. E. AUXIER, F. P. DAMRON and W. W. BARRETT for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

The correctness of the amount of the judgment rendered is admitted. The sole question to be determined is whether the evidence adduced sustains the grounds of attachment contained in the petition. The grounds are:

"The defendants have no property in this state subject to execution or not enough thereof to satisfy the plaintiff's demand and the collection of the demand will be endangered by delay in obtaining a judgment of a return of no property found.'

See subdivision 2, section 194, Civil Code of Practice.

The Maryland Casualty Company, a corporation, for years prior to December 1, 1930, was engaged in Pike county, Ky., in the general insurance business. Francis, Francis & Trivett, a corporation, was in the general insurance business as agents at Pikeville, Ky., of the Maryland Casualty Company.

The Cannon Ball Cab & Bus Company and the Cannon Ball Transit Company, corporations, during that period of time, as common carriers, engaged in the business of motor transportation of passengers for hire. They contracted with the Maryland Casualty Company by and through its agents, Francis, Francis & Trivett, for insurance policies, for which they agreed to pay stipulated premiums and failed to pay them. To recover a balance thereon of $4,687.70, this action was instituted.

At the commencement of the action an attachment was issued against the Cannon Ball Cab & Bus Company and the Cannon Ball Transit Company, directed to the sheriff of Pike county to be levied on their property to satisfy the sum sued for. It was levied on their property, so indorsed, and returned to the office whence it issued, showing the property on which it was levied. On a trial in the circuit court the attachment was sustained; a lien declared thereunder on the property on which it was levied, which was directed to be sold to satisfy the debt, interest, and cost.

It should be noted that the Cannon Ball Cab & Bus Company and the Cannon Ball Transit Company are, in reality, the same. The first was incorporated with a.

capital stock of $25,000 which was later increased to $40,000. Thereafter, amended articles of incorporation were filed in the offices of the secretary of state, Frankfort, Ky., changing its name to Cannon Ball Transit Company and increasing the amount of its capital stock to $120,000 for which certificates of stock were later issued and delivered to the stockholders in the proportion of three to one shares of the stock issued in the original name.

To sustain the attachment issued on the grounds set forth in the petition, it was incumbent on the Maryland Casualty Company to show by competent evidence, first, that the defendant had no property in this state subject to execution or not enough thereof to satisfy the debt sued on; and, second, that the collection of the demand will be endangered by a delay in obtaining a judgment or a return of no property found. One of these conditions is not necessarily the concomitant of the other, although it may be so. Francis v. Burnett, 84 Ky. 23; Burdett v. Phillips, 78 Ky. 246.

The question to be considered first is, what property had the Cannon Ball Transit Company at the time the attachment herein was issued on February 10, 1931? Its solvency or insolvency at that time is not material. Herman Goepper & Co. v. Phœnix Brewing Co., 115 Ky. 708, 74 S. W. 726, 25 Ky. Law Rep. 84; Lexington Brewing Co. v. Goode & Co., 124 Ky. 476, 99 S. W. 338, 30 Ky. Law Rep. 639; Brasher v. Tandy, 37 S. W. 1045, 18 Ky. Law Rep. 701.

To escape the principles and the analogous facts stated in those cases, the bus companies predicate a theory on a question to, and an answer of, J. S. Miller, secretary, vice president, and general manager of Francis, Francis & Trivett. The question to him was: "At the time you turned this account over to your attorneys for suit, did you have any misgivings about it, or that you were in danger of losing any amount that you were able to prove due?" The answer was: "No." The opinion of Miller, if the grounds of attachment existed in fact at the time of the issuance of the attachment, is wholly immaterial and foreign to the issue to be decided. The first question to be determined is, What property did the bus company have in this state at the time of the issuance of the attachment subject to the execution? Generally speaking, any species of personal property

described as chattel and any real estate to which the debtor had title are subject to levy and sale under the writ of execution. The second question is, What was the value of their personal property and real estate at that time at a fair, voluntary sale made at once? The permits issued by the commissioner of motor vehicles to them, or to others, and owned at that time, were not subject to execution, and, therefore, the question of their value must be eliminated from the inquiry necessary to determine whether the grounds of attachment existed or did not exist.

According to the testimony of the auditor of the bus companies, at the date of the issuance of the attachment, excluding the permits, the book value of all property owned by them was $81,387.87. Their liabilities as the same appeared on their books were $100,791.29, or $19,000 in excess of its assets. This officer admitted that the books did not disclose the debt sued on and unpaid taxes and other items of indebtedness to which his attention was called.

Considering the testimony of the auditor, and the evidence of the Maryland Casualty Company's witnesses, we think the property owned by the bus companies at the date of the attachment, and which was subject to execution, was insufficient to pay their debts, including the debt sued for, and the collection of the Maryland Casualty Company's debt would have been endangered, if not entirely defeated, by delay in obtaining judgment and a return of no property found. The history of the bus companies, which is so fully shown by the verbal testimony, substantiates this conclusion.

The judgment sustaining the attachment is fully supported by the evidence.

Wherefore, the judgment is affirmed.