CASE 23—PETITION EQUITY—FEB. 3.

# Hearn, Lee & Pinckard v. Lander, &c. •

11bu 669
f128　348

APPEAL FROM FLEMING CIRCUIT COURT.

1. AN ORDER ADJUDGING PRIORITIES between claimants, refusing to substitute one party to the lien of another, and adjudging a sale of the property in controversy, is a final order.

2. WHEN ONE PARTY HAS THE RIGHT TO AVAIL HIMSELF OF ANOTHER'S DEFENSE, the latter has no right against the objection of the former to withdraw that defense after the case has been submitted for trial.

3. ALLEGED MISTAKES in writing a note and mortgage are not established in this case.

Hearn, Lee & Pinckard v. Lander, &c.

*The party alleging the mistakes failed to testify* as to them himself, and also failed to take the evidence of other accessible witnesses. See opinion for facts and circumstances.

4. THE WIFE MAY BE THE EQUITABLE DEBTOR OF HER HUSBAND.

*The creditors of the husband* are entitled to the benefit of payments made by him on property purchased in the name of his wife.

*To the extent his property is applied to the payment of her debts* for property purchased for her, she becomes his debtor in equity, and to that extent the property so purchased for her may be subjected to the payment of his debts, and as to pre-existing debts she is not protected by the homestead exemption statute.

WM. S. BOTTS, . . . . . . . . . . . For Appellants,

CITED

11 Bush, 556, Kimbrough v. Lane, &c.
MS. Opinion, Gillispie and wife v. Moon.
Story on Bailment, chap. 5, sec. 302, p. 315.
*Ib.* 333, Hamilton v. Wagner.
Story on Bailment, chap. 5, sec. 297.
Civil Code of Practice, sec. 120.
9 Da. 317, Norris v. Norris's adm'r
1 Metcalf, 668, Brookover v. Hurst.
6 Da. 265, Harrison & Co. v. Campbell.
4 B. M. 430, Bank of U. S. v. Huth.
1 Story's Equity Jurisp., chap. 5, sec. 157.
2 Johnson's Ch. Reps. 524, Lyman v. The United Ins. Co.
2 Bibb, 246, Garten and wife v. Chandler.
2 Kent's Com., lecture 31, p. 237.
2 Marshall, 56, Flowers v. Sproule.
2 Kent's Com., lecture 40, p. 577.
4 B. M. 482, Fetter & Co. v. Cirode.
4 J. J. M. 465, Miles & Co. v. Bacon.
6 B. M. 19, Copenheaver v. Huffaker & Co.
4 Little, 169, Bank of Kentucky v. Vance's adm'r.
2 Duvall, 254, Julian v. Pilcher.
17 B. M. 285, Swigert v. Bank of Kentucky.

E. C. PHISTER, . ⎫
L. W. ANDREWS, ⎬ . . . . . . . . . . For Appellees,
W. H. CORD, . . ⎭

CITED

Civil Code, secs. 153, 154, 165.
Civil Code, secs. 474, 120, 123.
2 Dana, 324, Violett v. Violett.

1 Met. 404, Short v. Tinsley.
1 Met. 668, Brookover v. Hurst.
8 B. Mon. 441.                    1 Met. 474.
4 Met. 108, Hanson v. Bowyer.          ·
1 Met. 100, Moore v. Shepherd.
6 Bush, 81, Dugan v. Massy.
8 Bush, 388, Brewer & Orr v. Cosby.
12 B. Mon. 38, Ratcliff v. Trimble.
10 B. Mon. 186.                   10 B. Mon. 385.
11 Bush, Smith v. The Belmont & Nelson Iron Co.,

JUDGE COFER DELIVERED THE OPINION OF THE COURT.

John Mullaney brought suit against John O'Sullivan and wife to obtain a judgment to sell thirty-two barrels of whisky alleged to have been mortgaged to the plaintiff by them to secure a note for $967.85, bearing date May 1, 1873, and due eight months after date.

The mortgage bears date April 30, 1873, and purports to convey to Mullaney thirty-two barrels of whisky belonging to Mrs. O'Sullivan to secure a debt of $3,000 owing by her to him, and for which she, together with her husband, simultaneously with the execution of the mortgage, had executed a note due twelve months after date.

Mullaney alleged that the note and mortgage were executed on the same day, but through mistake of the draftsman the note was dated May 1st and made payable eight months after date; and that in describing the note the draftsman of the mortgage, or the defendant, John O'Sullivan, who had it drawn, by mistake described it as for $3,000, payable twelve months after date; and that he (Mullaney) did not discover the mistake until recently before the suit was brought. He admitted that $500 had been paid on the note, and sought a sale of so much of the whisky mortgaged as would pay the balance due.

The suit was commenced January 14, 1874, and February 9th thereafter O'Sullivan and wife filed an answer, in which they admitted the execution of the note, but denied that they had

mortgaged the whisky sought to be sold to secure the debt claimed in the petition; and they say it is not true that the draftsman or John O'Sullivan by mistake described the note as payable twelve months after date and for $3,000.

On the same day on which the answer just referred to was filed Hearn, Lee & Pinckard brought an action at law against John O'Sullivan for a debt of over $1,200, and sued out an attachment, which they caused to be levied on twenty-three barrels of the whisky embraced in the mortgage.

February 25th E. H. Lander filed his petition claiming to have a lien on the whisky, and on his motion he was made a party defendant in that action, and filed his answer. He claimed that he had sold ten barrels of the whisky to Mrs. O'Sullivan, and that by an express agreement he retained possession and had a lien on it for the balance of purchase-money due him therefor. He also alleged that he held the possession of the remaining twenty-one barrels in September, 1873, when Mrs. O'Sullivan became the purchaser of certain real estate sold under a judgment rendered by the Fleming Circuit Court, and that Mrs. O'Sullivan and her husband agreed with him that if he would become her surety in two sale bonds for $616 he might retain the whisky subject to Mullaney's mortgage, as indemnity against loss on account of his suretyship for her, and that, trusting to such agreement, he became her surety and was bound on said bonds.

On the 12th of February Hearn, Lee & Pinckard filed their petition in and were made parties to the suit of Mullaney against O'Sullivan and wife, and filed an answer in which they charged that the mortgage to Mullaney was fraudulent, and that Mrs. O'Sullivan did not owe him any sum whatever. The case of Hearn, Lee & Pinckard was transferred to equity and consolidated with the suit of Mullaney.

Hearn, Lee & Pinckard afterward filed an amended answer, which they made a cross-petition against Lander and

O'Sullivan and wife, and alleged that to indemnify Lander on account of his suretyship for Mrs. O'Sullivan she and her husband had executed to him a mortgage on the property for which the bonds were given, and praying, in case their attachment against O'Sullivan was sustained, and it was adjudged that Lander had a lien on the whisky to indemnify him as surety for Mrs. O'Sullivan, that he be compelled to resort first to the mortgage on the real estate, or, if that could not be done, that they be substituted to the rights of Lander under his mortgage.

The court adjudged that Mullaney had a valid lien under his mortgage for the balance on his note for $967.85, and that Lander had a lien prior to that of Mullaney on the ten barrels of whisky sold to Mrs. O'Sullivan for the balance of purchase-money thereon, and that he also had a lien junior to that of Mullaney, but prior to the attachment of Hearn, Lee & Pinckard on all the whisky for the amount of the two sale bonds on which he was surety, and sustained Hearn, Lee & Pinckard's attachment and directed a sale of the whisky. From that judgment Hearn, Lee & Pinckard have appealed, and O'Sullivan prosecutes a cross-appeal to reverse the order sustaining the attachment.

1. It is insisted for the appellees that the judgment is not final, and that no appeal lies. We do not concur in this view. The court has not only adjudged the priorities as between the parties, and refused to substitute the appellants to the rights of Lander under his mortgage for indemnity, but has adjudged the attached property to be sold; and the appellants have a right, disputing as they do that either Mullaney or Lander has any valid lien on the whisky, to have their rights settled before a sale is made.

2. The next question is, has Mullaney a lien under his mortgage? That he has a debt against John O'Sullivan is, we think, established; but is that debt secured by the mortgage? O'Sullivan and wife in their original answer denied

that it was. In a subsequent answer, filed after the appellants had caused their attachment to be levied, they admitted there was some sort of mistake. They did not, however, withdraw their first answer, but after the case was submitted it was, on motion of Mullaney and with the concurrence of John O'Sullivan, stricken from the files because it was not sworn to.

The appellants claiming under O'Sullivan had a right to avail themselves of a defense made by him which, if true, was sufficient to defeat Mullaney, and they could not be deprived of the benefit of that defense, after the trial commenced, by the action of Mullaney and the concurrence of O'Sullivan. Mullaney might, before the action was submitted, have compelled O'Sullivan to verify the answer or have had it stricken off. If that course had been pursued the appellants would have had an opportunity to amend their pleadings and renew the issue, which they had no need to do as long as O'Sullivan's answer making that issue was on file.

The order striking the answer from the record having been excepted to, and being erroneous, we will treat the case as if that order had not been made.

The evidence does not, in our opinion, establish the alleged mistake. Mullaney was present a part, at least, of the time while the mortgage was being written, and had it in his possession, actual or constructive, for more than nine months before he says he discovered that it purported to secure a note for $3,000, payable in twelve months, instead of one for $967.85, payable in eight months, as he now claims it should have been. The mortgage on its face shows that it was written with more than usual care, and the draftsman is of the opinion that it was read to both O'Sullivan and Mullaney in the room where it was written. It would have been contrary to the usual habit of men for the mortgagee to be present when a mortgage was being written conveying to him property claimed by a married woman without reading or hearing it read; and when, in addi-

tion to the legal presumption that one accepting a deed knows what it contains, the draftsman testifies that it is his recollection that he read the deed to the grantee, the unsupported testimony of the latter ought not to prevail to establish a mistake in the deed, and especially when the facts show that there are other accessible, competent witnesses who could prove the mistake, if one existed.

Mrs. O'Sullivan testified in the case. If the mortgage was in fact given to secure the note sued upon, and for no other purpose, and the alleged mistakes existed, she knew the fact, and might and doubtless would have proved it, but she was not asked. John O'Sullivan especially would have known of such mistakes if they occurred, but he was not sworn.

In view of these facts and circumstances we think Mullaney has failed to establish the alleged mistake, and therefore has failed to show that the note sued on is secured by the mortgage.

3. We think the evidence shows that Lander had possession of the whisky in contest. The ten barrels sold to Mrs. O'Sullivan remained as they were when she purchased them, and should be regarded as having been in Lander's possession. The residue of the whisky was in the same warehouse, and we think was also under his control.

We are therefore of the opinion that he has a valid lien, not only for the balance of the price of the ten barrels, but also for indemnity for any payment he has or may make on the bonds.

4. But we think the court erred in not substituting the appellants to the rights of Lander under the mortgage on the real estate.

As between Mrs. O'Sullivan and her husband's creditors, the whisky, although purchased by her, was her husband's property, and if its proceeds are applied to indemnify Lander for money paid by him on the purchase-price of her prop-

erty, it is as if O'Sullivan had sold the whisky and paid the money for his wife on the bonds. It amounts simply to the application of the husband's property, which ought to have been applied to the payment of his debts, to pay for property purchased in the name of his wife.

Counsel urges as an objection to the substitution of the appellants to the rights of Lander under the mortgage, that the mortgage releases the homestead exemption of O'Sullivan and wife, and the wife being the owner, should not be deprived of her homestead for the benefit of her husband's creditors.

Her property can not be made liable, beyond the amount to which her husband's property is made liable, through Lander, for the price of the property purchased by Mrs. O'Sullivan.

To that extent she is, in equity, debtor to her husband's creditors, and neither he nor she, nor both together, can, by so disposing of his property as to make it liable for her debts, put it beyond the reach of the creditors of the husband.

All the debts due to the appellants were created before Mrs. O'Sullivan purchased the property, and before her husband's property was pledged to pay for it, and the act of putting his property into property purchased in her name, he being at the time insolvent, was voluntary, and therefore fraudulent as to his creditors, and no valid claim to a homestead can exist until the injury to those creditors is repaired.

5. The court erred, in the present state of the pleadings, in adjudging any thing to Lander for indemnity on account of his suretyship for Mrs. O'Sullivan. It is not alleged that he has paid any thing on either of the bonds, and there is no proof of the payment of more than one of them.

6. The evidence fully sustains the grounds for the attachment against O'Sullivan.

The judgment is reversed on the original and affirmed on the cross-appeal, and the cause is remanded for further proceedings in conformity to this opinion.