# Miller's Executrix et al. v. People's Bank et al.

(Decided June 5, 1931.)

186

C. C. WILLIAMS, W. N. FLIPPIN, and J. J. FELTON for appellants.

L. L. WALKER, S. D. LEWIS, J. J. FELTON, and E. BERTRAM for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER.—Reversing.

M. J. Miller died August 28, 1928, in Mt. Vernon, Ky. By his will, which was duly probated, he left all of his property to his wife, Susie B. Miller, subject to the payment of his debts. Among other things his life was insured for $10,000, and not long after his death the money was paid to her, and deposited to her credit in the People's Bank where she kept her account. She was in very poor health and had been for some time before her husband died. She was practically an invalid and left all of her business to her two sons, Floyd E. Miller and R. H. Miller, who were respectively the cashier and assistant cashier of the People's Bank in Mt. Vernon. The bank failed on April 23, 1930. At that time there were outstanding and unpaid the following debts of M. J. Miller: S. D. Lewis, note for $2,000, dated May 23, 1923, signed by F. E. Miller, R. H. Miller, and M. J. Miller; S. D. Lewis, note for $3,000, dated August 12, 1926, signed by the same parties; Georgia B. Rice note for $2,500 dated January 11, 1925, signed by Floyd Miller, R. H. Miller, M. J. Miller, and Susie B. Miller; also a note dated December 6, 1926, for $2,500 signed by Miller Bros., Floyd Miller, R. H. Miller, and L. J. Miller; also a note for $500, dated May 15, 1922, signed by Floyd

Miller, M. J. Miller, and Susie B. Miller. There were some credits on these notes for something more than the interest.

In 1918, Floyd Miller qualified as the guardian of Nath Swiney, an infant, and executed bond with his father, M. J. Miller, as his surety. On a settlement of his account as guardian, after the death of his father, it appeared that he owed, as guardian, $5,447. In addition to this, T. C. Griffin held a note signed by Floyd Miller, R. H. Miller, and M. J. Miller for $5,000, at M. J. Miller's death. After his death it was renewed by a note signed by Floyd Miller, R. H. Miller, and Susie B. Miller. C. D. Sutton had a like note signed by the sons and the father for $4,000, and after the father's death a renewal note was executed to him by the two sons and the mother for that amount. M. J. Miller had in his lifetime built a theater building at a cost of about $28,000, and had executed a mortgage to the Commonwealth Life Insurance Company for $8,000. After his death Susie Miller took up this mortgage and executed to the insurance company a mortgage for $13,000, and had paid $675 on it in January, 1930. The People's Bank had a savings department, and considerable money was so deposited by different persons. Floyd Miller and R. H. Miller had taken credits from these accounts without authority and credited the amounts on the Miller accounts. Mrs. Miller had not only the theater, but she had also waterworks, which her husband had established, and, on twenty-six acres of ground which she owned in or near Mt. Vernon, they were running a dairy and chicken farm. So they, in addition to their personal accounts, kept these accounts of her business at the bank; Miller Theater, Miller Bros., Mrs. M. J. Miller. The dairy and chicken farm account was kept in the name of Miller Bros. Of the credits wrongfully transferred from the saving account, $8,430.80 was credited to Miller Bros.; $1,094.02 to Miller Theater; $3,699.42 to Susie B. Miller's account; $12,378.36 to F. E. Miller; $2,900.87 to Floyd Miller Land Company; and $5,383.34 to R. H. Miller. The last three accounts were Floyd's and R. H. Miller's matters and not a part of their mother's business. The two sons simply ran her business for her. They looked after the dairy and chicken farm for her as well as the theater, and collected the rents from the other real estate and put the money on one of the accounts above indicated. When the bank

closed the account of the Miller Theater was overdrawn $449.69, the account of Mrs. J. J. Miller $826.29, and that of Miller Bros. $100. The property was all assessed in her name. She had given her sons no interest in it in any way, and they were simply looking after it for her, in view of her being practically an invalid. The total diversion of funds by them from the savings account to other accounts amounted in all to over $50,000. The value of the property left by M. J. Miller, as shown by the plaintiffs and the defendants is as follows:

|  | Plaintiff's Value | Defendant's Value |
|---|---|---|
| Theatre Building | $ 8,000.00 | $ 30,000.00 |
| Store Building | 10,000.00 | 20,000.00 |
| Home Place and land | 4,000.00 | 15,000.00 |
| Water Works | 1,000.00 | 25,000.00 |
| McClure Farm | 800.00 | 2,900.00 |
| Horse Shoe Bend Farm | 500.00 | 1,200.00 |
| ½ of McFerrin Farm |  | 1,000.00 |
| Henderson Lot |  | 500.00 |
| Live stock & Implements |  | 6,000.00 |
|  | $24,300.00 | $101,600.00 |

Suits were filed by the creditors, above named, after the bank failed, and attachments were taken out on the ground that neither of the defendants had property subject to execution, sufficient to pay the plaintiff's claim, and that the collection of the debt would be endangered by the delay arising before judgment and a return of no property found, also that the defendants had fraudulently sold and disposed of their property with fraudulent intent to cheat, hinder, and delay their creditors. In some of the cases the first ground was relied on only as to Floyd and R. H. Miller, and the second only as to Mrs. Miller.

The grounds of attachment were all denied, and the cases were consolidated. On final hearing the circuit court sustained the attachments and directed a sale of all the property. The defendants appeal. In the brief filed for the appellants, complaint is only made that the court erred in sustaining the attachment and in refusing to adjudge that the personal property levied on belonged to Susie B. Miller.

The difference between the parties as to the value of the waterworks property is due to the fact that no waterworks franchise had been granted by the city. The only action taken by the city council is in these words:

"On the evening of September 5, 1928, the town trustees met in continued session of September 1. All members were present. The minutes were read by the clerk and said minutes were approved.

"By unanimous vote of the board, M. J. Miller was allowed a permit to lay water lines, said permit now being on file with the city clerk."

Under section 164 of the Constitution the franchise may only be granted as therein provided; but Miller had dug a deep well at a considerable expense and had erected a large reservoir; the mains had been put down and the waterworks property, including the water used by his property, charged at the same rate as other people paid, brought in an annual income of about $2,600. The McClure land was mortgaged for $2,500, and the difference in the valuation of this tract was as to how much would be left after paying the mortgage. The tract contained 243 acres of land, as appellants claimed, worth $15 an acre. The valuation of the theater property and the storehouse on the opposite side of the street, as fixed by appellants, was based upon the annual income these properties were producing. They showed that their annual income was about 8 per cent of the value they fixed. The valuation of the home place was fixed by them according to the price that two other properties, not far away, had brought lately. On the other hand, the proof for the appellees was to the effect that the house was old, and that $4,000 was all it would reasonably bring at a forced sale. The other sales referred to were private sales, made to parties who wanted that particular piece of property. The proof showed that the 26-acre tract was worth $5,000 or $6,000.

While the proof is clear that Floyd Miller and R. H. Miller had not property subject to execution sufficient to pay any of the debts sued on, the proof is not the same as to Mrs. Miller, and there is no proof that she has done anything to defraud her creditors. None of her property has been sold, except a little personal property from time to time in the ordinary course of business, such as a cow or calf or hogs ready for market. The statute does not

warrant the adding of all the debts together and authorize an attachment if the defendant's property is not sufficient to pay all the debts. The rule is that in each case the attachment cannot stand if the defendant's property which is subject to execution is sufficient to pay that debt. Burdett v. Phillips, 78 Ky. 246; Francis v. Burnett, 84 Ky. 23. If it is doubtful, under the conflicting evidence as to value, whether Mrs. Miller had enough property subject to execution to pay any of the debts sued for, the attachment was not warranted as to her. Haynes v. Viley & Cassell's Assignee, 2 S. W. 681, 8 Ky. Law Rep. 606. Appellees insist that under the will of M. J. Miller his whole estate was charged with his debts, and that Mrs. Miller only takes under the will what is left after paying the debts of the estate. This is true, the debts must be paid before she gets anything under the will. The unpaid debts of M. J. Miller, as shown by the proof, are these: S. D. Lewis notes, $5,000; Georgia B. Rice notes, $5,500; bond of Floyd Miller, $5,448. In addition to this were the Griffin note for $5,000, and the Sutton note for $3,000, but these had been surrendered, and a note executed by Mrs. Miller and her two sons had been accepted. The acceptance of the new notes by these parties placed these creditors in the same position as other creditors of Floyd Miller, R. H. Miller, and Susie B. Miller. They could not, after accepting the renewal notes, assert any rights under the will of M. J. Miller, or claim a preference over the other creditors of Mrs. Miller or her two sons. M. J. Miller's debts amount to about $16,000. These debts must be paid before Mrs. Miller takes anything under the will. But without going into the proof as to the value of the property, it is clear that, after paying this $16,000, she has enough property subject to execution to pay the claim asserted against her in any one of the other actions under the allegations of the petition. Under the proof the attachment in each case as to her was not sustained, although it may be questionable whether she has enough property subject to execution to pay all the debts. The attachments as to her should have been discharged.

A creditor of M. J. Miller could not take out an attachment against the executor and thus secure a preference over other creditors of the estate. If the executor was not proceeding properly or there was danger of the estate being wasted, the remedy of the creditors was by

action to settle the estate or to require the executor to give bond, or, if necessary, by proper injunctive proceedings.

In an action on a joint cause of action against two or more defendants, an attachment cannot be sustained against one of them on the sole ground that he has not sufficient property subject to execution to pay the debt. To warrant an attachment, it must appear that none of the obligors within the jurisdiction have enough property for this purpose. Dunn's Trustee v. McAlpin, 90 Ky. 78, 13 S. W. 363, 11 Ky. Law Rep. 884. It follows that in all the cases where the two sons were sued jointly with their mother on joint notes, and an attachment was taken out against them on this ground alone, the attachment should not have been sustained. There was no proof that either of the sons had made or were about to make a fraudulent disposition of their property. It did appear that Floyd Miller had left the county of his residence and so concealed himself that a summons could not be served upon him, and this ground of attachment in the cases where it was relied on was sustained by the evidence, and those attachments as to him were properly sustained. In the actions brought against Floyd E. and R. H. Miller, and not against Mrs. Miller, there was a sufficient evidence that they had not sufficient property to pay the debt sued on, and that the collection of the debt would be endangered by the delay arising before judgment or a return of no property found. A person doing business in his own name, but as the agent of another, is personally liable to the creditor who may at his election pursue the agent or the undisclosed principal. The order sustaining the attachments as to the two sons will on the return of the case be modified to conform with the above rules.

To obtain an attachment the plaintiff must file an affidavit showing, among other things, that the claim is just and the sum which affiant believes the plaintiff ought to recover. Civil Code of Practice, sec. 196. In the actions of the following plaintiffs, the affidavit did not comply with the Code: W. A. Fallin, People's Bank (4 cases), Georgia B. Rice, Griffin, Baker & Lewis (2 cases), and C. D. Sutton. None of these attachments should have been sustained, but on the return of the case the plaintiffs will be allowed to amend their affidavits if they so desire.

After the death of her husband, Mrs. Miller, as shown by the proof, simply left her business in the hands of her sons. They had full authority from her to draw checks at all times and did draw checks on any of the accounts as they saw fit. They were simply managing her business for her with her knowledge and consent. In so doing they drew out of the bank a large sum of money, both in the account of the theater, Miller Bros., and Susie B. Miller. This money was drawn out of the bank by her agents in the transaction of her business and by her authority. Then to cover up what they had done without right they credited these accounts with money that had been deposited by other people in their savings accounts, and after all this was done the accounts were overdrawn as above stated. Mrs. Miller is not entitled to any credit on her accounts for the amounts credited there without right, and she is responsible to the bank for all the money so withdrawn from the bank without right; that is, for the sums credited without right and the amount the account was overdrawn after these credits were given. As between her and the bank she must under the proof stand the loss, for her sons were her agents, attending to her business and keeping these accounts for her as such agents. Apparently they drew out the money and wasted it themselves. But they had authority from her to draw checks and did draw them, and she must stand the loss.

The court erred in adjudging that the personal property levied on was the property of Floyd and R. H. Miller. This personal property was a part of the dairy and chicken farm, which Mrs. Miller received under her husband's will. She had never disposed of it in any way. Her sons simply managed it for her. They did the business in the name of Miller Bros., so as to keep their accounts separate from the other matters they were managing for her. They sold some of the stock from time to time and bought others, and it was all done for their mother as her agents. They spoke of the property as "our property." This is not unnatural in a family where a son is doing business for his mother. They never claimed this property as their own in any way, and the testimony as to the ownership of the property is uncontradicted and clear. There was no intent to defraud in the use of the name Miller Bros. It was simply their way of doing business. The note of U. G. Baker for $235, given in the name of Miller Bros. for stock for the

farm, should be paid by Mrs. Miller. It is simply the agents' contract in their own name, without disclosing the name of their principal. In such cases at the election of the creditor, the undisclosed principal is liable to him. 2 C. J. p. 840, sec. 522. The court should have adjudged this property to S. B. Miller, and the proceeds should be held like the proceeds of the sale of the land; for this is in truth property received under the will, for what has been bought since Mr. Miller's death simply replaced what was sold after his death.

The court did not, in his judgment, define how the money arising from the sale of any of the property should be paid out, except that the debts of M. J. Miller must be first paid. On the return of the case, out of the proceeds on all the sales, these debts should be first paid. Then the debts of S. B. Miller and the balance, if any, should be paid to her. The creditors of her husband, M. J. Miller, had a right under his will to subject his property to the payment of their debts, and on all the facts shown the court properly adjudged all the property to be sold; for manifestly a sale of all the property was necessary to settle the rights of the parties. On the return of the case to the circuit court, the plaintiffs may be allowed to amend their pleadings to conform to the proof. The judgment appealed from was a final order. Hearn v. Landar, 11 Bush, 673; Staton v. Byron, 105 S. W. 928, 32 Ky. Law Rep. 246; Nolan's Ex'rs v. Nolan, 220 Ky. 613, 295 S. W. 893.

Judgment reversed, and cause remanded for further proceedings consistent herewith.